48303. MEAD CORPORATION v. BLACKMON.

ARGUED JULY 2, 1973 — DECIDED JULY 16, 1973 — REHEARING DENIED JULY 30, 1973 —

*John L. Williams, Beryl H. Weiner, Rose Higby Staples,* for appellant.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, Timothy J. Sweeney, Assistant Attorneys General,* for appellee.

DEEN, Judge. Judge Osgood Williams who heard and decided this case wrote a scholarly and well considered opinion which we adopt here as our opinion in this case. Whether or not the lithographs, flexographic engraving, templates and so on were the property of the customer, and what value should be assigned to them, were questions of fact as to which there was sufficient evidence in the stipulation of the parties to support the court's finding that the Commissioner had made out a prima facie case. We therefore quote Judge Williams' opinion in this case as follows: "Mead Corporation contends that its purchases of the property involved were exempt under Ga. Code Ann Sec. 92-3403a(C)2(a). It also contends that in any event the property was resold by Mead Corporation to its

customers and therefore its purchases were not taxable. It further contends that it cannot be compelled to pay a tax on its sales to its customers because the assessment, as it understood it, was made on its purchases.

"For property acquired in a conceded 'personal service transaction' may be resold. Such a resale would be taxable. In *Superior Type Co. v. Williams,* 98 Ga. App. 89, 95-96 (1958); *Undercofler v. Foote & Davies, Inc.,* 115 Ga. App. 341 (1967); and *Hawes v. Higgins-McArthur Co.,* 117 Ga. App. 738 (1968), the Court of Appeals held that lithoplates, engravings, and similar materials purchased by a printer were resold by the printer to its customers. In each case, the Court held that the printer's sales to his customers were taxable sales and that the tax was properly collected. Thus, regardless of whether Mead Corporation's *purchases* were exempt as personal service transactions, its disposition of the lithoplates, engravings, and similar materials may, and does in this case, constitute a taxable sale.

"The facts in this case would require the determination that Mead did in fact resell the property to its customers. *Superior Type, Inc. v. Williams,* 98 Ga. App. 89, 95-96 (1958); *Undercofler v. Foote & Davies,* 115 Ga. App. 341 (1967); *Hawes v. Higgins-McArthur Co.,* 117 Ga. App. 738 (1968); *Undercofler v. Eastern Air Lines, Inc.,* 224 Ga. 824-833-34 (1966); *Colonial Stores v. Undercofler,* 223 Ga. 105 (1967).

"Mead Corporation's sales to its customers of lithoplates, engraving and the similar materials involved in this case were taxable retail sales. *Undercofler v. Foote & Davies,* 115 Ga. App. 341 (1967); *Hawes v. Higgins-McArthur Co.,* 117 Ga. App. 738 (1968).

"Mead Corporation contends that its sales of property were exempt under the first sentence of Code Ann. Sec. 92-3403a(C)2(p), which in essence is a restatement of the constitutional limitation on State sales and use taxation under Commerce Clause of the United States Constitution. In order to come within that exemption, however, the sales of the property must be effected by a delivery to another state, i.e., a delivery in interstate commerce. Here, the sales were not completed by a delivery in interstate commerce. The sale was complete in the State of Georgia at Mead Corporation's plant when its customer acquired the right to the property and Mead recognized that it held the property for its customer. *Hawes v. Higgins-McArthur Co.,* 117 Ga. App. 738 (1968) and *Undercofler v. Foote & Davies, Inc.,* 115 Ga. App. 341 (1967) each hold on identical facts that the sale is complete at the

printer's plant. *Undercofler v. Eastern Air Lines, Inc.,* 221 Ga. 824, 833-34 (1966), holds on similar facts that a sale is completed in Georgia when the customer acquires the right to the property even though the delivery of the property is delayed and even though actual delivery does not take place in the State. When that occurred here the sale was completed and Georgia could tax the transaction without impediment under the Commerce Clause. Here, moreover, Mead Corporation has not shown that it delivered the property to its customers. The stipulated facts do not show that it made such delivery.

"Mead Corporation contends that the assessment was an assessment for tax on its purchases and, therefore, even though it owes tax on its sales, the Commissioner cannot assert that liability in this proceeding. Mead Corporation's position is not supported by the facts and is contrary to decisions dealing with the nature of an appeal.

"First, an assessment is not a determination only as to the taxability of certain transactions. An assessment is a determination of total tax liability for particular taxable periods. Thus, if a taxpayer prevail on an appeal from a sales and use tax assessment, that determination is *res judicata* as to his sales and use tax liability for the taxable periods involved, not just as to particular transactions. *Undercofler v. Ernhardt,* 111 Ga. App. 598 (1965). An assessment is, therefore, a determination that the taxpayer has underpaid his tax liability for the period involved by a certain amount. It is not, contrary to Mead Corporation's assertion, an adjudication limited to particular transactions.

"The assessment in this case, therefore, is a determination that Mead Corporation underpaid its liability during the period July 1962 through June 1965 by the amount of $23,282.51 tax. It is based on findings as to particular transactions with respect to particular items of property, but it is a determination as to tax liability on all transactions engaged in by Mead Corporation during the period.

"Second, an appeal from an assessment is a *de novo* investigation of the tax liability of the taxpayer for the periods involved, and all facts relevant to that investigation must be considered, whether or not they were previously considered by the Revenue Commissioner in making the assessment. *Undercofler v. White,* 113 Ga. App. 853, 854 (1966). If the Revenue Commissioner ascertains facts during the course of an appeal supporting his determination that the taxpayer had underpaid his tax liability, those facts may be urged at trial even though inconsistent with his original

findings. *Orkin Exterminating Co. v. Blackmon,* 229 Ga. 146 (1972) (and case cited). Surely, Mead Corporation would not contend that the Revenue Commissioner could not, for example, reduce the State's claim in this case by virtue of ascertaining that other transactions involved in the period had resulted in an overpayment or that Mead itself could not assert similar facts. Similarly, the Revenue Commissioner is entitled to offer evidence supporting the liability asserted, even though the assessment was not based on that evidence.

"*Undercofler v. Foote & Davies, Inc.,* 115 Ga. App. 341 (1967) —This case involves a commercial printer taxpayer who purchased lithoplates and materials for the production thereof from various suppliers, which were prepared from copy supplied to the taxpayer by its customers and were of use only in connection with the particular order or re-orders of the customer. No separate amount was shown for the lithoplates in billing its customer but the lump sum reflected the cost thereof.

"*Hawes v. Higgins-McArthur Company,* 117 Ga. App. 738 (1968) — This case involves, in the words of the Court of Appeals, 'a substantially identical factual situation' to that in *Foote & Davies.*

"The Court found in *Foote & Davies* that the stipulated facts authorized the conclusion that the purchases of the lithoplates by the taxpayer were purchased for resale to its customers, even though no separate amount was shown for them in the billing, since the taxpayer 'delivered the lithoplates to its customers upon request and in every way treated them as the property of its customers when it retained them,' which permitted the inference that the customers 'knew and assented to the purchase of such lithoplates and intended to purchase them at the time they placed their orders for printing.' (at 343). The Court never really discusses the question as to whether a service had actually been purchased since the taxpayer apparently based its principal argument upon the resale approach.

"The evidence here clearly shows that, as indeed Mead Corporation argues, Mead Corporation sold the property involved to its customers, that it did not collect sales tax on those sales, and the tax is due in the amount stated in the assessment."

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*