3 N.J. Tax 233 (1981)
MIDDLESEX WATER COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
ATLANTIC CITY ELECTRIC COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
COMMONWEALTH WATER COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
ELIZABETHTOWN GAS COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
ELIZABETHTOWN WATER COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
HACKENSACK WATER COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
JERSEY CENTRAL POWER AND LIGHT COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
MONMOUTH CONSOLIDATED WATER COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
NEW JERSEY BELL TELEPHONE COMPANY, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
Tax Court of New Jersey.
August 25, 1981.
*235 William C. Slattery for plaintiffs Middlesex Water Company, Elizabethtown Gas Co., Elizabethtown Water Co. and Public Service Electric and Gas Co. (Rosen, Gelman & Weiss, attorneys).
Henry P. Megargee, Jr. for plaintiff Atlantic City Electric Company (Lloyd, Megargee, Steedle, Youngblood & Franklin, attorneys).
*236 William C. Davis for plaintiffs Commonwealth Water Company, Monmouth Consolidated Water Co. and New Jersey Water Co. (Davis & Reberkenny, attorneys).
John P. Wallace for plaintiff Hackensack Water Company.
Robert O. Brokaw for plaintiff Jersey Central Power and Light Company.
Edward Evans for plaintiff New Jersey Bell Telephone Company.
Gerald W. Conway for plaintiff New Jersey Natural Gas Company (Conway, Reiseman, Baumgardner, Hurley & Kleinfeld, attorneys).
Robert C. Koury for plaintiff South Jersey Gas Company (Koury, Tighe & Lapres, attorneys).
Herbert K. Glickman and Joseph C. Small, Deputy Attorneys General, for defendant Director, Division of Taxation (John J. Degan, Atty. Gen., of New Jersey, attorney).
LASSER, P.J.T.C.
This is taxpayers' motion for summary judgment. Thirteen utility company cases have been consolidated for the purpose of this motion. Taxpayers are public utilities engaged in the business of selling electricity, gas, water or telephone services in New Jersey. The Director of the Division of Taxation has imposed an additional sales tax assessment on charges by outside contractors for installation of public utility production, generation, transmission and distribution machinery, apparatus or equipment, hereinafter referred to as "utility equipment." This assessment is made pursuant to N.J.S.A. 54:32B-3(b)(2) of the Sales and Use Tax Act.[1] Section 3 of the act defines the sale and service transactions which are subject to the tax. Section 3(b)(2) imposes sales tax on "[i]nstalling tangible personal property...."
*237 The initial question to be decided is whether installation charges for additions or capital improvements to personal property are exempt under N.J.S.A. 54:32B-3(b)(2)(v) which exempts "services rendered in installing property which, when installed, will constitute an addition or capital improvement to real property, property or land."

I

Meaning of the Five Words "Real Property, Property and Land" in § 3(b)(2)(v)
Taxpayers contend that the exemption in subsection (v) of § 3(b)(2) for "services rendered in installing property which, when installed, will constitute an addition or capital improvement to real property, property or land" exempts from tax installation charges for utility equipment because such equipment, when installed, is an addition or capital improvement to real property, property or land. They contend that the word "property" includes personal property.
Taxpayers contend that the New Jersey Sales and Use Tax Act should be read to exempt installation charges for utility equipment because:
1. Such charges are exempt under the New York Sales and Use Tax Act, after which the New Jersey Act is patterned.
2. Assembly Bill 705 (1967), introduced on March 6, 1967, proposed to delete the words "property or land" from § 3(b)(2)(v). This proposed deletion was an apparent effort to make it clear that charges for installation of personal property to personal property (the cost of installing an engine in a portable crane, for instance) are not exempt. Shortly thereafter, the Legislature, at the insistence of the utility industry, amended the bill to delete this proposed change. This deletion in the bill is relied upon by taxpayers as an expression of intent by the Legislature to include installation charges for capital improvements to personal property within the category of exempt services.
*238 3. The Sales and Use Tax Act should be read together with N.J.S.A. 54:30A-49 et seq. (hereinafter the Public Utilities Gross Receipts Tax Act) to conclude that sales and use tax exemptions granted to public utilities should be liberally construed.
4. Public policy indicates an intent to minimize the tax burden on utility companies.
The Director contends that the phrase "real property, property or land" in N.J.S.A. 54:32B-3(b)(2)(v) is limited to real property. He argues that the utility equipment installed is personal property and that, upon installation, it retains its original nature as personal property, never becoming real property or an addition or capital improvement to real property and, therefore, charges for its installation are not exempt.
The elements to be considered are the wording and legislative history of:
1. N.J.S.A. 54:32B-3(b)(2) and 3(b)(4) of the New Jersey Sales and Use Tax Act and the Director's Regulations, N.J.A.C. 18:24-5.2, 5.6 and 5.7(b);
2. The New York Sales and Use Tax Act from which the New Jersey Sales and Use Tax Act is derived, and
3. The relationship of the New Jersey Sales and Use Tax Act to the New Jersey Public Utilities Gross Receipts Tax Act.
Sales tax is imposed under the New Jersey act on every retail sale of tangible personal property not specifically exempted. N.J.S.A. 54:32B-3(a). "Sale" is broadly defined in the act as both the transfer of tangible personal property and the rendering of services. N.J.S.A. 54:32B-2(f). The act imposes the sales tax on a broad range of services. These services, defined in § 3(b), include producing, fabricating, processing, printing, installing, maintaining, servicing, repairing, storing and advertising.
There is a relationship between § 3(b)(2) and § 3(b)(4). The first deals with services to personal property and the second deals with services to real property. Section 3(b)(2) taxes the installation, maintenance, servicing and repairing of tangible *239 personal property. Among the exemptions listed under this section is the exemption of "property which, when installed, will constitute an addition or capital improvement to real property, property or land." N.J.S.A. 54:32-3(b)(2)(v). It is clear that the installation (but not the sale) of property which becomes a capital improvement to real property is exempt. Thus, bricks used to build a house are subject to sales tax but services for incorporating them into the house are not.
We conclude that it is the legislative scheme of the Sales and Use Tax Act to tax the purchase of personal property under § 3(a) and to tax services for installing such property under § 3(b)(2) or § 3(b)(4) unless the installation constitutes an addition or capital improvement to real property. Section 3(b)(2)(v) must be read in conjunction with § 3(b)(4). The five words in § 3(b)(2)(v) are limited to real property, so that § 3(b)(2) and § 3(b)(4) are consistent.
If the five words mean both real and personal property, as taxpayers claim, § 3(b)(2) gives in the first line and takes away in the last. If the words "real property, property or land" mean real and personal property the only installation charges remaining taxable would be those relating to installation of noncapital items. Installation charges for this type of personal property would appear to be minimal. All installations of motors, gears, fans, pumps and all nature of mechanical, electrical, electronic and automotive equipment which are additions or capital improvements to personal property would be exempt. This would carry the exemption far beyond the public utility field and exempt a substantial number of services which are now being taxed. All additions which increase the capital value or the useful life of personal property would be exempt. It does not appear likely that the Legislature would have included installation charges as taxable, only to exempt substantially all such charges. If the Legislature had intended to tax only installation charges for noncapital improvements to personal property it could have done so by direct language.
*240 The legislative scheme of the Sales and Use Tax Act is to exempt charges for installation of capital improvements to real property. There is no specific indication in this statute that the Legislature intended to extend this exemption to installation charges for capital improvements to personal property. Exemptions from tax are strictly construed and granted only when clear and unambiguous. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961); Branch v. Monmouth Medical Center, 138 N.J. Super. 524, 531, 351 A.2d 756 (App. Div. 1976), aff'd 73 N.J. 179, 373 A.2d 651 (1977); Container Ring Co., Inc. v. Taxation Div. Director, 1 N.J. Tax 203, 208 (Tax Ct. 1980).
The New Jersey Sales and Use Tax Act is patterned after the New York Sales and Use Tax Act. N.Y. Tax Law, § 1105 (McKinney) of the New York Act exempts installation charges "for installing property which, when installed, will constitute an addition or capital improvement to real property, property or land as the terms real property, property or land are defined in the real property tax law...."
The New York Real Property Tax Law, § 102(12) (McKinney), defines the five words and leads to two conclusions, first, that the five words "real property, property or land" as used in the New York Sales and Use Tax Act do not include personal property and, second, that these words as defined in New York do include utility equipment. The scheme for the taxation of public utilities is not the same in New York as it is in New Jersey.
We conclude from the foregoing that the intent of the New Jersey Legislature cannot be ascertained from the wording and definitions in the New York act.
The court cannot conclude, solely from the five words, that the Legislature intended to substantially enlarge the exemption for installation charges by also applying it to capital improvements to personal property. The phrase "real property, property or land" does not specifically refer to personal property. The placement of the word "property" between the words "real property" and the word "land," both real property terms, *241 gives no indication that the word "property" means personal property. Rather, its placement between these words indicates the intent that it also be regarded as a real property term. See Germann v. Matriss, 55 N.J. 193, 220, 260 A.2d 825 (1970). Harmoniously interpreted, the first term, "real property," is the more general of the three terms and the two following terms are the more specific, "property" meaning improvements to real property and "land" being that upon which the improvements are constructed. To interpret the word "property" as meaning personal property is an inharmonious interpretation. See DeFazio v. Haven S and L Ass'n, 22 N.J. 511, 518, 126 A.2d 639 (1956); Salomon v. Jersey City, 12 N.J. 379, 389, 97 A.2d 405 (1953). These five words must be interpreted in light of the New Jersey tax plan, taking into consideration the entire Sales and Use Tax Act. The court is aware that the general definition of the word "property" found in N.J.S.A. 1:1-2 includes personal property "unless restricted or limited by the context to either real or personal property...." However, the court concludes that in the context of § 3 of the Sales and Use Tax Act, the word "property" means the same as the words "real property" and "land" which surround it, and does not introduce a new category  personal property. Denbo v. Moorestown Tp., 23 N.J. 476, 481, 129 A.2d 710 (1957); Giles v. Gassert, 23 N.J. 22, 33-34, 127 A.2d 161 (1956).
The court is also mindful of the fact that the 1967 amendment of § 3(b)(4), reducing the five words to the two words "real property," was originally drafted to be applicable to the same five words also appearing in § 3(b)(2), and that the reduction from five to two words did not occur in § 3(b)(2) by reason of the intercession of the utility industry. The court cannot conclude that legislative inaction constituted express intent to exempt all installation charges for additions and capital improvements to personal property of every nature. If the Legislature had intended to exempt installation charges for additions or capital improvements to utility personal property, it could have done so specifically.
*242 The Public Utilities Gross Receipts Tax Act limitation against imposition of other taxes on public utilities is not a bar to the imposition of the sales tax. N.J.S.A. 54:30A-51 was enacted to implement a general scheme by which local taxation of public utilities was limited. The Sales and Use Tax Act, enacted subsequently, specifically exempts from sales tax certain public utility business transactions (the purchase of machinery, apparatus and equipment under § 8(m) and the sale of public utility product under § 8(g)). To the extent that retail sales are not exempted by the act, they are taxable and payable by all taxpayers, including utility companies. The Sales and Use Tax Act is not in conflict with the Public Utilities Gross Receipts Tax Act, a tax on sales not being the type of tax prohibited by that act. See Dvorkin v. Dover Tp., 29 N.J. 303, 316, 148 A.2d 793 (1959). Taxpayers do not contend that they are exempt from the Sales and Use Tax Act. Taxpayers' Reply Brief at 25-26.
Taxpayers contend that there is a legislative intent to minimize the tax burden on public utilities. They rely in part upon decisions in New Jersey Bell Tel. v. Taxation Div. Director, 152 N.J. Super. 442, 378 A.2d 38 (App. Div. 1977), and Body-Rite Repair Co., Inc. v. Taxation Div. Director, 178 N.J. Super. 263, 428 A.2d 940 (App. Div. 1981). The court, in these two cases, did recognize a general policy to broadly exempt telephone services and to subsidize public transportation. However, the court in those cases found specific services exempt based upon an analysis of the language in sections specifically devoted to those services. We cannot conclude from a policy to favor public utilities that the Legislature intended in a general section applicable to all taxpayers (§ 3(b)(2)) that installation charges for utility equipment should be exempt. To hold that the word "property" means personal property would exempt installation charges for all personal property constituting a capital improvement to personal property, whether or not owned by a utility company. The intent to grant such a broad exemption cannot be found in the statute.
*243 Further, if there is a policy on the part of the Legislature to minimize the tax burden of public utilities, that policy can only be implemented by an express exemption in tax legislation. To the extent that the Sales and Use Tax Act contains specific exemptions, such legislative policy is effected; however, the existence of such policy cannot be used to imply additional exemptions not expressly stated in the Sales and Use Tax Act.
The regulations of the Director which implement the taxation of installation charges are:
1. N.J.A.C. 18:24-5.2, which defines the five words "real property, property or land" to mean "land and any structure or appurtenance affixed permanently thereto." This regulation provides a definition for these five words which was not provided in the New Jersey act when these five words were carried over from the New York act.
2. N.J.A.C. 18:24-5.6, which provides that installation charges are taxable except for additions or capital improvements to real property, and
3. N.J.A.C. 18:24-5.7(b), which provides that installation of tangible personal property is not a capital improvement to real property when the purchase or use of the property is exempt from sales tax under N.J.S.A. 54:32B-8.
The first two of these regulations exempt charges for installation of personal property which constitutes an addition or capital improvement to real property but tax charges for installation of personal property which does not. The burden is upon the taxpayer to establish that the regulation is arbitrary, capricious, unduly onerous or otherwise unreasonable.
The standards of judicial review of the validity of regulations promulgated by an administrative agency, as set forth in New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 384 A.2d 795 (1978), were commented on in Sorensen v. Taxation Div. Director, 2 N.J. Tax 470 (Tax Ct. 1981). The New Jersey Supreme Court in Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 69-70, 389 A.2d 465 (1978) found that "[i]n interpreting *244 the meaning of a statute this Court places great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted." The court is satisfied that the two regulations, 5.2 and 5.6, are consistent with the legislative scheme to exempt charges for installation of capital improvements only to real property. The third of these regulations, N.J.A.C. 18:24-5-5.7(b), concludes that the installation of utility equipment is not a capital improvement to real property. Thus, under this regulation, installation charges for utility equipment are exempt on purchase under § 8(m)(2)[2] but taxable under § 3(b)(2).
The Director's interpretation of § 8(m)(2) and § 3(b)(2), that installation of utility equipment never results in a capital improvement to real property, may or may not be justified. We cannot conclude in the present posture of this case that the installation of utility equipment never is a capital improvement to real property. This is a mixed question of fact and law which must be determined on an item by item basis. Therefore, we cannot, at this stage in the proceeding, reach a conclusion with respect to N.J.A.C. 18:24-5.7(b).
The court concludes that the overall plan of the New Jersey Sales and Use Tax Act is to tax charges for installation of personal property as an addition or capital improvement to personal property but to exempt such installation charges when the installation of the personal property constitutes an addition or capital improvement to real property. Whether the specific installation charges which are the subject of the additional assessments in the instant case are for additions or capital improvements to real property or personal property is a mixed question of fact and law requiring testimony as to the nature of the property installation.

*245 II

Are Public Utility Equipment Installation Charges Exempt Under N.J.S.A. 54:32B-8(m)?
We have concluded that the statutory scheme of § 3 of the Sales and Use Tax Act is to tax charges for installation of personal property which, when installed, will constitute an addition or capital improvement to personal property, and to exempt from tax charges for installation of personal property which, when installed, will constitute an addition or capital improvement to real property. Unless a sale of personal property is specifically exempted under § 8, it is taxable whether it is intended for installation to personal property or real property. The charge for installation of this personal property is taxable unless (1) the installation is an addition or capital improvement to real property or (2) the installation charge is specifically exempted by § 8.
Taxpayers content that § 8(m) exempts both sales of utility equipment and installation services rendered in connection with such equipment. Taxpayers' contention is based upon the definition of the word "sale" as "including the rendering of any service, taxable under this act...." N.J.S.A. 54:32B-2(f). The act provides that the definition of sale is applicable "[u]nless the context in which they [the terms] occur requires otherwise...." N.J.S.A. 54:32B-2. If the term "sale" includes services, it includes maintaining, servicing and repairing, as well as installing. It has not been argued that maintaining, servicing and repairing of 8(m) property is exempt from tax. However, consistency demands that the word "sale" include maintenance, servicing and repair charges as well as installation charges.[3] There is no basis in the act for holding that the term "sales" as used in § 8(m) includes installation charges but excludes maintenance, *246 servicing and repair charges from exemption, or that it grants exemption for all of these services.
Transactions exempt from sales tax are listed in § 8. This section was derived from the N.Y. Tax Law § 1115 (McKinney) of the New York Sales and Use Tax Act. The New York Act deals with sales of personal property in paragraph (a) and with services in separate paragraphs thereafter. The New Jersey Act does not separate sales and services. Having consolidated sales and services, exemption is accomplished by specifically identifying the sales and services exempted.[4]
Specific services are granted exemption in §§ 8(g), 8(k) and 8(l). There is no specific exemption for services in § 8(m). If the word "sales" includes installation charges, as taxpayers contend, the exemption applies to § 8(m)(1) (machinery, apparatus or equipment used generally in manufacturing) as well as § 8(m)(2) and § 8(m)(3). There is no specific wording in the statute which would justify this broad exemption.
We do not regard the holding in N.J. Bell Tel. supra, as sufficiently broad to exempt installation charges for all § 8(m) sales. That court held that the legislative intent was to exempt telephone services in their broadest sense. Id. at 447, 378 A.2d 38. The court held that service connections, moves and changes of telephone customers' receivers were includable within § 8(g), exempt telephone services. This holding was based on the conclusion that the telephone receiver is necessary to the furnishing of telephone services, the charge being made for telephone services generally, not specifically for the receiver. Judge Horn, in a concurring opinion, explains this holding on the basis that the telephone receiver is a portion of the entire *247 network of services offered to the customer and is indispensable because it provides the customer with access to the network and thus to the telephone service. Id. at 453, 378 A.2d 38. The installation of the telephone receiver is an installation service rendered to the customer, as distinguished from installation services rendered to the company in connection with personal property sold to it for use in the conduct of its business. The holding of the court is limited to customer telephone service connections, moves and changes, and does not extend to installing, maintaining, servicing or repairing of lines, cables or central office equipment. Gas, electric and water companies may be differentiated from the telephone company on the ground that they sell a product  gas, electricity or water  not services. See N.J.S.A. 54:32B-8(g).
Statutes granting exemption from taxation are most strongly construed against those claiming exemption. Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 363, 221 A.2d 15 (1966); Mal Bros. v. Taxation Div. Director, 124 N.J. Super. 55, 61, 304 A.2d 750 (App.Div.), cert. den. 63 N.J. 554, 310 A.2d 469 (1973). We hold that, in the context of the use of the word "sales" in § 8(m), charges to utility companies for installation of personal property are not included within the definition of the word "sales." These services are not specifically exempted under § 8(m). Their taxability must be determined under § 3(b)(2) or § 3(b)(4).

III

Definition of Real Property To Be Used In N.J.S.A. 54:32B-3(b)(2)
Charges for installing personal property which constitutes an addition or capital improvement to personal property are subject to tax. Charges for installing personal property which constitutes an addition or capital improvement to real property are exempt from tax. What definition of real property is to be used to determine whether an installation is an addition or capital improvement to personal property or to real property? By *248 regulation N.J.A.C. 18:24-5.7(b), the Director has provided that installation of personal property is not a capital improvement to real property when the purchase of the property installed is exempt from sales tax under § 8(m)(2). The Director contends that charges for installation of personal property which is exempt from tax on purchase under § 8(m)(2) must necessarily be subject to tax under § 3(b)(2) because the installation is an addition or capital improvement to personal, not real, property. This contention is based upon the narrow definition of "real estate"  only lands and buildings but not equipment, even though attached to lands and buildings  found in the Public Utilities Gross Receipts Tax Act, N.J.S.A. 54:30A-50. This statute provides:
As used in this Act unless the context otherwise requires:
........
(b) "Real estate" means lands and buildings, but it does not include railways, tracks, ties, lines, wires, cables, poles, pipes, conduits, bridges, viaducts, dams and reservoirs (except that the lands upon which dams and reservoirs are situated are real estate), machinery, apparatus and equipment, notwithstanding any attachment thereof to lands or buildings.
The Director contends that the Public Utilities Gross Receipts Tax Act definition should apply to public utility equipment in the Sales and Use Tax Act. He argues that the Sales and Use Tax Act and the Public Utilities Gross Receipts Tax Act should be interpreted in pari materia. This narrow definition does not apply to general manufacturing property or telephone property because they are not subject to the public utilities gross receipts tax. If the Director's argument is accepted, charges for installation of utility equipment are subject to tax under § 3(b)(2), but general manufacturing property, exempted under § 8(m)(1), and telephone company property, exempted under § 8(m)(3), are not subject to tax if the property, when installed, constitutes an addition or capital improvement to real property.
The statutory scheme of the Public Utilities Gross Receipts Tax Act is to allocate the right to tax public utilities between local municipalities and the State. This allocation is accomplished by permitting local municipalities to tax "real estate," which is defined in the act as "lands and buildings," but to bar *249 local property taxation of tracks, wires, pipes, machinery, apparatus and equipment, etc., notwithstanding attachment to lands or buildings. It is the phrase, "notwithstanding any attachment thereof to lands or buildings," in the Public Utilities Gross Receipts Tax Act that differentiates its definition of real estate from that found in the Business Personal Property Tax Act[5] and applied by the Supreme Court of New Jersey in Bayonne v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979). The Public Utilities Gross Receipts Tax Act definition was intended to implement the distinction between (1) lands and buildings which are subject to local property tax and (2) utility property which is included in the computation of the public utilities gross receipts tax. There is no indication in the Sales and Use Tax Act that the special definition of real estate used in the Public Utilities Gross Receipts Tax Act for the purpose of allocating taxes between the municipalities and the State should also apply to the sales tax. In N.J. Bell Tel. Co., supra at 447, 378 A.2d 38, the court held that the Business Personal Property Tax Act and the Sales and Use Tax Act are to be interpreted in pari materia. The definition of real estate as contained in the Public Utilities Gross Receipts Tax Act is a special and limited definition for the purpose of effectuating the intent of that act. The definition of real property found in the Business Personal Property Tax Act and applied in Port Jersey is general in nature and is appropriate for use in interpreting the Sales and Use Tax Act.
If the Legislature had intended to exclude public utilities from sales tax, it could have done so in a few words in § 9 of the act. It did not do so. If the Legislature had intended to exclude installation services to § 8(m)(2) and § 8(m)(3) property from sales tax, it could have done so in a few words in § 8 of the act. It did not do so. If the Legislature had intended the public utilities gross receipts tax definition of real estate to apply to *250 § 8(m)(2) property, it could have done so in a few words in § 8(m)(2). It did not do so.
The Director contends that if personal property is exempt under § 8, its installation is not to be deemed a capital improvement to real property, and installation charges are therefore taxable under § 3(b)(2). He argues that if the purchase is exempt, the installation is not. This position may be inconsistent with the general scheme of the act to exempt installation charges for additions or capital improvements to real property. The fact that the purchase is granted exemption under § 8 in certain specific instances does not support the position that the installation charge for this exempted item of personal property should be taxable, contrary to the general scheme of § 3(b)(2) and § 3(b)(4). Even if the public utilities gross receipts tax definition were to be applied to § 8(m)(2) property, there would be no reason to apply this definition to § 8(m)(1) or § 8(m)(3) property because neither general manufacturing businesses nor telephone companies are subject to the Public Utilities Gross Receipts Tax Act.
We conclude that use of the Public Utilities Gross Receipts Tax Act definition of real estate cannot be supported by the in pari materia argument when this definition is not applied and cannot be applied to § 8(m)(1) and § 8(m)(3) property. Such application would treat public utilities more harshly than other taxpayers. Installation charges for § 8(m)(2) property would be taxed. Installation charges for personal property exempt under § 8, other than public utility property, which constitutes an addition or capital improvement to real property, would not be taxed.
We cannot find that the Legislature intended to treat public utilities more harshly than other taxpayers by applying the public utilities gross receipts tax definition of real estate to the words "real property" in § 3(b)(2)(v).
Internal consistency requires the use of the definition of real property found in the Business Personal Property Tax Act and the Port Jersey decision for all taxpayers installing tangible *251 personal property. Installation of § 8(m)(2) property may or may not constitute an addition or capital improvement to real property under § 3(b)(2)(v), depending upon the facts of each case.

IV

The Director's Right To Present Alternative Defensive Theories To Sustain The Additional Assessment
The Director has asserted that if installation charges are not taxable, as urged by taxpayers, the additional assessment may be defended by proof that the property purchased was not entitled to exemption on purchase under § 8(m)(2). The Director argues that, if the property purchased becomes real property, it is not machinery, apparatus or equipment and thus is not entitled to the § 8(m)(2) exemption on purchase.
Taxpayers contend that the Director may not defend the additional assessment on grounds other than the basis for the additional assessment as stated in the original audit and notice of deficiency. They contend that if the Director were permitted to urge alternate grounds for assessment at this time, the effect would be to permit an additional assessment after the expiration of the statute of limitations.
The statute of limitations for the Sales and Use Tax Act is found in N.J.S.A. 54:32B-27 and provides that "no assessment of additional tax shall be made after the expiration of more than 3 years from the date of the filing of a return...." This does not, however, bar defense of an assessment made within the statutory period.
The Director does not seek to impose an additional assessment in excess of the original additional assessment.[6] He is offering a different theory to sustain the same additional assessment for *252 the same tax. At the time of imposition of an additional assessment the Director is not required to state all possible grounds and theories to support the assessment. He should not be precluded from developing any defensive theory to justify the additional tax, provided due process requirements are met.
We have been unable to find any New Jersey authority in the tax field on this issue.[7] At least one other state has permitted an alternative theory defense. In Mead Corp. v. Blackmon, 129 Ga. App. 526, 199 S.E.2d 839 (Ct.App. 1973), the Georgia Revenue Commissioner assessed a sales and use tax deficiency against taxpayer on the ground that the taxpayer was the purchaser and ultimate consumer of certain printing plates and related materials used in the manufacture of containers and packages. The taxpayer contended that it did not purchase the printing plates, but rather that it purchased services with regard to the plates. Further, the taxpayer maintained that it was not the ultimate consumer of the plates, since it purchased the plates for and sold them to its customers.
The taxpayer contested the deficiency assessment and at trial the Commissioner asserted an alternative basis for his tax deficiency determination that tax was due. The Commissioner maintained that, even if the taxpayer was not the ultimate consumer and therefore was not liable for tax on the purchase of the plates, the taxpayer was liable for tax on sales of the plates to its customers, at least to the extent that the plates made up part of the sale of the containers manufactured by taxpayer. The taxpayer objected, contending that the tax was originally imposed on purchases and that, as such, the Commissioner could not assert liability for a tax on sales since such assertion would amount to a different assessment.
*253 The trial court (whose opinion was adopted by the appeals court) held that the Commissioner should not be precluded from asserting an alternative basis for imposing a tax for two reasons: first:
... an assessment is not a determination only as to the taxability of certain transactions. An assessment is a determination of total tax liability for particular taxable periods. Thus, if a taxpayer prevails on an appeal from a sales and use tax assessment, that determination is res judicata as to his sales and use tax liability for the taxable periods involved not just as to particular transactions. Undercofler v. Ernhardt, 111 Ga. App. 598[, 142 S.E.2d 317] (1965). An assessment is, therefore, a determination that the taxpayer has underpaid his tax liability for the period involved by a certain amount. It is not, contrary to Meade Corporation's assertion, an adjudication limited to particular transactions. [199 S.E.2d at 842]
Thus, in that court's view, an "assessment" could be supported by any existing evidence.
Second, the court held that
... an appeal from an assessment is a de novo investigation of the tax liability of the taxpayer for the periods involved, and all facts relevant to that investigation must be considered, whether or not they were previously considered by the Revenue Commissioner in making the assessment. Undercofler v. White, 113 Ga. App. 853, 854[, 149 S.E.2d 845] (1966). [Id. at 843]
Thus, since the court would hear the matter de novo, the taxpayer was not prejudiced by permitting the Commissioner to make alternative arguments.
Federal courts have permitted defense of additional federal tax assessments on the basis of alternate theories where due process requirements have been met. BASF Wyandotte Corp. v. Commissioner, 532 F.2d 530 (6 Cir.1976) dealt with the assessment of tax on gain realized on the sale of power plants. In that case the Commissioner sought to justify the imposition of the tax on the basis of two alternative defenses. The court of appeals held that "[t]he presumption of correctness of the deficiency determination is not lost because the Commissioner relies on alternative theories and there is no prohibition against the Commissioner raising an alternative theory at the time of hearing so long as the taxpayer has an opportunity to present proof to counter the alternative theory." Id. at 540.
In Commissioner v. Transport Mfg. and Equip. Co., 478 F.2d 731 (8 Cir.1973), the court held that an alternative defensive *254 theory raised for the first time in a brief after trial deprived the taxpayer of fair notice and substantially prejudiced the taxpayer so as to justify denial of the right of the Commissioner to raise these alternative defenses. Id. at 736.
In the instant case the Director has presented his alternative defensive theory prior to the execution of the pretrial order. The alternative defensive theory arises from the same set of facts that gave rise to the additional assessment, i.e., the purchase and installation of utility equipment. The legal position taken by the taxpayers with respect to the taxability of installation charges may have an effect on the taxability of the purchase of the utility equipment. The proceedings before the Tax Court are de novo. The Director's position has been made known to the taxpayers early enough to avoid surprise. There appear to be no due process infirmities. Therefore, we conclude that the Director may assert alternative defensive theories in support of the additional assessment.

V

Conclusion
The court holds that:
1. The words "real property, property and land," as used in N.J.S.A. 54:32B-3(b)(2)(v), mean real property. The sales and use tax statutory scheme of §§ 3(b)(2) and 3(b)(4) is to exempt installation charges for additions or capital improvements to real property but to tax installation charges for additions or capital improvements to personal property.
2. The word "sales," in the context of § 8(m), does not include installation services, and, thus, charges for installation services are not included in the exemption granted under this section.
3. The definition of real property, as found in the Business Personal Property Tax Act and in Port Jersey, is to be used in defining real and personal property for purposes of §§ 3(b)(2) and 3(b)(4). Whether an installation is a capital improvement to *255 real property must be determined based upon the nature of the property and the installation.
4. Alternative defensive theories may be used to support an assessment of additional tax, provided the additional assessment has been made within the statutory period and due process requirements have been met.
Based on the foregoing determinations, taxpayers' motion for summary judgment is denied.
NOTES
[1] Both sales and use taxes are involved in this action. The use tax mirrors the sales tax. References hereafter to sales tax also include use tax.
[2] In the case of New Jersey Bell Telephone Co. the applicable exemption section is § 8(m)(3). References to § 8(m)(2) refer to § 8(m)(3) with respect to this plaintiff where appropriate. It should also be noted that, effective September 11, 1980, § 8 was reorganized so that § 8(m)(2) became § 8.13(b), and § 8(m)(3) became § 8.13(c).
[3] We note that in Taxpayers' Reply Brief, at 17, taxpayers state "maintenance and repair services are clearly taxable under § 3(b)(2) even if they involve the installation of new parts or replacements for worn out or defective parts and Petitioners have never contended otherwise."
[4] Although § 8 originally limited its scope to § 3(a) sales, without referring to § 3(b) services, this omission has been termed legislative drafting oversight. Body-Rite Repair Co., supra, at 265, n. 1, 428 A.2d 940 and N.J. Bell Tel. Co. supra, at 451, 378 A.2d 38 (Horn, J., concurring). This oversight has been corrected in the 1980 revision of § 8 by eliminating the narrow reference to § 3(a) and substituting a more general reference which would encompass both sales and services.
[5] "Goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto. N.J.S.A. 54:11A-2(b)(2)...."
[6] The assertion of an alternate theory for the purpose of imposing an additional assessment in excess of the original additional assessment was not raised by the parties and is not determined by the court.
[7] It is interesting to note that in Union Tp. v. Taxation Div. Director, 176 N.J. Super. 239, 1 N.J. Tax 15, 422 A.2d 803 (Tax Ct. 1980), this court held that the Director, in an equalization proceeding, could rely at hearing on a ground for rejecting a sale other than the ground upon which his original rejection was based.