AXELRAD, J.T.C.
In this State tax matter, the taxpayer, Beaverbrook Motors, Inc.,[1] contests the assessment by the Director, Division of Motor Vehicles (“DMV”) of taxes due under the Motor Fuels Use Tax Act of 1963 (“Motor Fuels Act”), N.J.S.A. 54:39A-1 to -29. The taxpayer filed a timely appeal to this Court of DMV’s Final Determination in the amount of $7,769.56 due for the period of July 1, 1996 to December 31, 1997, plus interest. This assessment was based upon a determination by DMV that the taxpayer failed to substantiate its fuel purchases in New Jersey. The Final Determination provided that “[ajfter giving careful consideration to the information revealed in the course of the audit and conference of August 14, 1998, it has been determined that bartering is not an acceptable means of proving that fuel was purchased and the tax was paid.”
The Motor Fuels Act imposes a tax on each gallon of fuel used in this State by users of “qualified vehicles” and entitles every user subject to the tax to a credit for taxes paid on fuel purchased in New Jersey and used outside of the State. N.J.S.A. 54:39A-3, -8. The reason for the credit is that forty-seven of the forty-eight contiguous states require interstate motor carriers to report how much fuel they use within the borders of their state and to pay fuel taxes based on these reports. This fuel use tax enables a state to assess highway licensee fees on all motor carriers that travel on its roads, not only on those that purchase fuel and pay the tax at the pump within the jurisdiction. 28 N.J.R. 2328(a), May 6, 1996 (Summary).
*156 The taxpayer operates tow trucks and small tractor trailers used to haul construction equipment, which are undisputably “qualified vehicles” under the Motor Fuels Act. Harvey Nobel is the sole proprietor of Beaverbrook Motors, an éntity separate and apart from the taxpayer (hereinafter referred to as “service station”), which operates a Gulf service station where gasoline and diesel fuel are sold and repairs are performed on motor vehicles. According to the testimony of William Buckley, the accountant who performs services for both of Nobel’s entities, the corporate taxpayer herein was created predominantly for the purpose of obtaining certain types of insurance liability policies.
Both Nobel and Buckley testified that the taxpayer purchases the majority of its diesel fuel from the service station and pays the full posted price for it through an inter-company accounting. When a vehicle is towed by the taxpayer to the service station and the vehicle’s owner makes payment by credit card, the card is processed by the service station and the charge attributable to the towing service[2] is credited as revenue to the taxpayer. When the taxpayer’s vehicles obtain diesel fuel on an as-needed basis from the service station, the person at the pump processes a “house account” slip which he places into his shift bag along with the credit cards and money received from the other customers. On a daily basis the service station’s employee reconciles the receipts and cash against the gallon amounts listed on the pumps and debits the taxpayer’s account for the fuel purchased by it as reflected on the house account slips. Subsequently, on a periodic basis a settlement is made by the taxpayer for the fuel it purchased from the service station. Buckley’s testimony, corroborated by the itemized summary he prepared of the towing services performed by the taxpayer and the fuel it purchased from the service station for the period from July 1996 to December 31, 1997, was that, over a typical eighteen-month period, the credits to the taxpayer relating to its towing services and debits relating to its fuel purchases almost balanced out.
*157 According to the testimony of Marsha Weissman, the supervising auditor of DMV, on July 1, 1996 New Jersey began participating in the International Fuel Tax Agreement (“IFTA”), a federally mandated, multi-jurisdictional plan. 49 U.S.C.A. § 31701 et seq.[3] Under IFTA, a motor carrier no longer had to register, report how much fuel it used, and pay fuel tax in every state that it traveled through. Instead, the motor carrier registered, reported, requested credits for taxes paid on gasoline purchased, and paid fuel tax to a single base state where the user resided and had a business. The base state would act as the clearing house to process and, if desired, audit the returns, collect the fuel tax, prepaid an accounting of the taxes and credits due to the various states, and distribute the appropriate amounts of tax to the other IFTA jurisdictions listed on the report. N.J.A.C. 13:18-3.1. Under IFTA, New Jersey is required to refund tax to qualifying vehicle users amounts constituting credits for fuel purchased in New Jersey and used out of state. New Jersey is the taxpayer’s base state for IFTA purposes.
Even prior to New Jersey’s participation in IFTA, the Motor Fuels Use Tax Act and the Regulations promulgated by the Director thereunder required the user to file quarterly operational reports, record odometer readings at specified intervals, maintain fuel purchase receipts, and keep detailed records in the form prescribed by the Director regarding such items as the number of over-the-road miles traveled by each vehicle within and outside this State and the number of gallons of motor fuel purchased in this State and the total amount used by the vehicle. N.J.S.A. 54:39A-4, -6, -9, 24(a); N.J.A.C. 13:8-4.7, 4.10. In connection with the Legislative directive of January 5, 1996 for New Jersey to join IFTA, the Director was authorized to promulgate uniform rules and regulations necessary to be in compliance with, administer, and enforce IFTA. N.J.S.A. 54:39A-24(a)(b).
*158 The relevant Regulations, which became effective July 1, 1996, required a licensee to “maintain receipt records to substantiate information on quarterly tax reports regarding fuel purchases and tax paid by fuel type.” N.J.A.C. 13:18-8.11(a). Moreover, they specify the type of source documents required in order for a licensee to obtain credit for tax paid purchases and mandate that a “fuel purchase receipt or invoice must include at least the following:”
1. The month, day and year of purchase;
2. The seller’s name and address;
3.. The number of gallons or liters purchased;
4. The fuel type;
5. The price per gallon/liter and total amount of sale;
6. The vehicle unit number and license plate number; and
7. The name of the licensee, purchaser or lessee/lessor.
[N.J.A.C. 13:18—3.11(c).]
The new Regulations continue to require the licensee to maintain individual trip records for each vehicle showing, among other items, beginning and ending odometer readings, origins and destinations, along with routes of travel, as well as quarterly records for each vehicle showing odometer readings, total mileage traveled in all jurisdictions, and total gallons of fuel purchased. N.J.A.C. 18:13-12 (superseding N.J.A.C. 13:18-4.19).
Furthermore, N.J.A.C. 13:18-3.13(f) required all audits conducted by the Director to be in compliance with IFTA requirements. Pursuant to Section XI.(A.) of the IFTA Agreement, an audit committee was formed which adopted the audit manual to be used by all IFTA jurisdictions when performing audits under the Agreement. Under Section A550.100 of the IFTA Audit Manual, if the licensee’s records are
lacking or inadequate to support any report filed by the licensee or to determine the licensee’s tax liability, the base jurisdiction shall have the authority to estimate the fuel use ujoon (but is [sic] not limited to) factors such as the following:
.005 Prior experience of the licensee;
.010 Licensees with similar operations;
.015 Industry averages;
.020 Records available from fuel distributors; and
.025 Other pertinent information the auditor may obtain or examine.
*159 Unless the auditor finds substantial evidence to the contrary by reviewing the above, in the absence of adequate records, a standard of 4MPG [miles per gallonl/1.7KPL [kilometers per liter] will be used.
After performing an audit of the taxpayer for the sample period from July 1, 1996 through December 31, 1997, meeting with Nobel and Buckley, and reviewing documents, DMV concluded that the taxpayer’s inter-company receipts were insufficient proof to establish its fuel purchases in New Jersey. As a result, the taxpayer was not entitled to a credit for the tax it claims it paid to New Jersey for such fuel to the extent the fuel was used out of the State. In calculating the tax due from the taxpayer, however, DMV accepted the taxpayer’s representation of fuel purchases in other states because the taxpayer had valid gas station receipts for those purchases, and accepted the total miles traveled in each state as reported by the taxpayer. Since the taxpayer did not maintain odometer readings for each vehicle, records of actual fuel pumped into each vehicle and actual mileage traveled, or individual trip sheets showing origin and destinations along with routes of travel, the auditor determined that an “mpg factor analysis was impossible” based on actual mileage per gallon and used a 4 mpg factor to estimate fuel use. The result of the audit was that DMV re-calculated fuel tax due from the taxpayer for the sample period based upon a disallowance of credit for any fuel purchases in New Jersey and based upon a 4 mpg factor to estimate fuel use. The result was the issuance of an assessment against the taxpayer in the amount of $7,769.56, plus interest.
The taxpayer submits that: (1) DMV is limited to the language of its Final Determination that “bantering is not an acceptable means of proving that fuel was purchased and the tax was paid” and thus is precluded from claiming insufficiency of records as a basis for the assessment, and, in the alternative, that (2) the house account receipts, although not in strict compliance with the Regulations, along with the explanation of the relationship between the taxpayer and the service station and the accounting prepared by Buckley, constitute sufficient proof of fuel purchases in New Jersey, and (3) DMV should have accepted the taxpayer’s mpg factor.
*160 First, it is clear from the language of the audit, the meetings and correspondence between the parties, and the discovery in this litigation, that (1) the taxpayer was aware that its records were considered insufficient by DMV, and (2) the term “bartering” used in the Final Determination was intended in its broad sense to encompass concerns with the record-keeping between the taxpayer and the service station and the insufficiency of the records, rather than its legal definition of “exchang[ing] goods or commodities for other goods.” Black’s Law Dictionary 191 (6th ed.1990). Even if DMV is offering an alternative theory to that set forth in the Final Determination, the Tax Court has held that the director of an administrative agency is not required to state all possible grounds and theories to support the assessment, and should not be precluded from developing any defensive theory to justify the tax, provided he or she meets due process requirements and acts within the statutory period. See Middlesex Water Co. v. Director, Div. of Taxation, 181 N.J.Super. 338, 3 N.J.Tax 233, 251-54, 437 A.2d 368 (Tax 1981) and Telepages, Inc. v. Director, Div. of Taxation, 9 N.J.Tax 30, 38-39 (Tax 1987). The theory advanced by DMV arises from the same set of facts that gave rise to the assessment, and there is no claim of surprise or prejudice by the taxpayer. Moreover, as Judge Lasser noted in Middlesex Water, the taxpayer is not prejudiced by permitting DMV to make an alternative argument since the Tax Court reviews proceedings de novo. Id. at 254; see also Telepages, Inc., 9 N.J.Tax at 39.
In support of the taxpayer’s claim that its records were adequate, the taxpayer placed into evidence a representative receipt. This receipt was a duplicate, credit card style, imprinted with the “Gulf’ logo. The designation “BB 44,” date, type of fuel, quantity, price per gallon, invoice amount, and the initials of the person who pumped the fuel were handwritten. The receipt does not contain the seller’s name and address, the license plate number of the vehicle, or the name of the purchaser, in violation of the mandatory minimum requirements of N.J.A.C. 13:18-3.11. The receipt was not signed by, nor was a copy provided, to the motor vehicle operator.
*161 The taxpayer submits that the court should fashion an equitable remedy, relax the strict requirements of the Regulations in this case, and apply its ruling prospectively based on the following facts: (1) New Jersey’s participation in IFTA had just begun with the commencement of the audit period, (2) the Regulations establishing the minimum requirements for the fuel purchase receipts necessary for the credits had been recently enacted, (3) this is a case of first impression interpreting the requirements of N.J.A.C. 13:18-3.11, (4) the line item transfers between the two entities were acceptable accounting procedures which Mr. Nobel believed would constitute sufficient records, (5) the taxpayer’s vehicles used fuel when they rendered towing services, and (6) the evidence demonstrated that the fuel was purchased in this State by the taxpayer at the posted price. The taxpayer further submits that it would be unjust enrichment and against public policy for the State to deny the taxpayer the fuel tax credit to which it was entitled solely as a result of the taxpayer’s failure to comply with the exact letter of the Regulations.
The New Jersey Supreme Court has recognized that “[i]n interpreting the meaning of a statute this Court places great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted” because of that agency’s expertise in the specialized and complex area. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 69-70, 389 A.2d 465 (1978). “Moreover, the agency’s interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable.” Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984) (citations omitted). Furthermore, courts are not free to substitute their judgment for that of the agency as to the wisdom of the agency’s action provided the administrative action is statutorily authorized and not otherwise defective because arbitrary or unreasonable. Sharps, Pixley, Inc. v. Director, Div. of Taxation, 16 N.J.Tax 626, 640 (Tax 1997).
The Legislature gave express statutory authority to DMV to prescribe uniform rules and promulgate Regulations to administer, enforce, and maintain compliance with IFTA. N.J.S.A. 54:39A-24b. *162 [4] As the base state for this taxpayer, New Jersey is responsible to all the other IFTA jurisdictions to rely upon the most accurate, trustworthy information to consistently administer and calculate the motor fuel tax, and distribute it to the appropriate member states. In order to effectuate these policy considerations, N.J.A.C. 13:18-3.11 establishes the minimum information that must be contained on the source documents in order for any purchaser to obtain credit for tax paid, which requirements are not arbitrary, unreasonable, or unduly burdensome. This court is not free to substitute its judgment for that of DMV and determine that it can look beyond the defective receipts and provide the relief requested by the taxpayer. It is irrelevant to this judicial review that there is no claim that either the taxpayer or the service station committed fraud in reporting the transactions. Whether or not the taxpayer followed acceptable accounting procedures is also irrelevant since its use of acceptable accounting procedures is not the standard for compliance with the New Jersey Motor Fuels Use Tax Act.
It is well settled that “every person is conclusively presumed to know the law, statutory and otherwise.” Graham v. N.J. Real Estate Comm’n, 217 N.J.Super. 130, 138, 524 A.2d 1321 (App.Div.1987), citing In re Mild, 25 N.J. 467, 485, 136 A.2d 875 *163 (1957) (some citations omitted); Schirmer-National Co. v. Director, Div. of Taxation, 17 N.J.Tax 495 (Tax 1998). The situation before the court is not one where the Regulations were enacted during the sampling period. Rather, the proposed IFTA Regulations were properly published in the New Jersey Register on May 6, 1996, with requests for comments, prior to their adoption on June 10, 1996, effective July 1, 1996. 28 N.J.R. 2328(a) (May 6, 1996) and 28 N.J.R. 3307(a) (July 1, 1996). Thus, the subject Regulations were indisputably in effect prior to the audit period and are being applied prospectively from their date of enactment. Furthermore, as testified to by Weissman, after the Legislature authorized New Jersey to participate in IFTA, a packet was sent out to all licensees and/or their representatives, which would include Halsey Traffic, the entity who handled the taxpayer’s IFTA filings, containing the registration forms and information booklet, which included the Regulations. Simply because this appeal’s to be the first ease interpreting Regulation N.J.A.C. 13:18-3.11(a) does not constitute justification, in law or equity, for this court to create an exception for this taxpayer, who should have had knowledge of these Regulations prior to the sampling period, and accept the taxpayer’s proofs which are clearly deficient under the Regulations.
Furthermore, as the taxpayer’s records are inadequate under the Act and Regulations, the auditor properly estimated fuel use based on a standard of 4 mpg to calculate the taxpayer’s motor fuels use tax liability in accordance with the IFTA Audit Manual. This standard appears to be reasonable, in view of the fact that at least four other jurisdictions apply a presumption of one gallon of diesel fuel for every four miles traveled, in the absence of adequate or complete records.[5] The reason for establishing an estimate standard is particularly clear in a case such as the present one, where the taxpayer failed to keep records for *164 each vehicle and estimated and reported miles per gallon ranging from 3.68 to 5.45, which was not even consistent with the testimony of Nobel that the trucks used by the taxpayer had a range of 7-14 mpg.
In the absence of adequate records to contradict the reasonable assertions of the State agency, the Final Determination of DMV will be affirmed and Judgment will be entered accordingly. Cf. TAS Lakewood, Inc. v. Director, Div. of Taxation, 19 N.J.Tax 131 (Tax 2000); Ridolfi v. Director, Div. of Taxation, 1 N.J.Tax 198 (Tax 1980).

 The New Jersey Division of Motor Vehicle's Final Determination dated January 6, 1999, is addressed to “Mr. Harvey Nobel/Beaverbrook Motors, Inc." so the taxpayer's complaint to the Tax Court is captioned “Harvey Nobel and Beaverbrook Motors, Inc., jointly, severally, individually, or in the alternative v. New Jersey Division of Motor Vehicles." It is undisputed that the taxpayer against whom the assessment was imposed was Beaverbrook Motors, Inc. As such, all references to “taxpayer" will refer to Beaverbrook Motors, Inc. Harvey Nobel is also the sole proprietor of “Beaverbrook Motors," a service station, which is an entity separate and apart from the taxpayer.

 On many occasions, a vehicle is lowed to the sendee station, and repairs are made. Only the towing service fee is credited to the taxpayer.

 Pursuant to L 1995, c. 347, § 11, eff. January 5, 1996, the New Jersey Legislature authorized the Director to enter into IFTA for "the reporting and payment of tax to a single base state and the administration of motor fuel use taxes and their distribution to member stales.” N J.S A. 54:39A-24.

 Other jurisdictions that have enacted statutes or regulations similar to N.J.A.C. 13:18-3.11 include: Alabama, Ala.Admin.Code r. 810-8-1-.09 (2000); Connecticut, Conn. Agencies Regs. § 12-480-1a (2000); Idaho, Idaho Admin.Code r. 35.01.05.180 (West, WESTLAW through June 7, 2000); Illinois, Ill.Admin.Code tit. 86, § 500.335g (2000); Louisiana, La.Rev.Stat.Ann. § 47:806 (West, WESTLAW through 1999 Reg. Sess.); Mississippi, Miss.Code Ann. § 27-61-12 (West, WESTLAW through 1999 Reg. Sess.); Nebraska, Neb.Rev.Stat. § 66-713 (West, WESTLAW through 1999 First Reg. Sess.); Oregon, Or.Admin.R. 740-055-0110 (West, WESTLAW through April 14, 2000); Pennsylvania, 61 Pa.Code § 313.14 (West, WESTLAW through 2000 Supp. 309); South Dakota, S.D. Codified Laws § 10-47B-159 (West, WESTLAW through 2000 Reg. Sess.); Washington, Wash.Rev.Code § 82.38.140 (West, WESTLAW through 1999 spec. Sess.); and Wisconsin, Wis.Admin.Code § Trans 152.07 (West, WESTLAW through 2000 Reg. No. 535). Some additional requirements include: pre-printed serial numbers on invoices, invoices signed by seller and driver of vehicle, copy of (invoices provided to driver of vehicle, and certification that taxes were paid on fuel purchased.

 Ala.Admin.Code r. 810-8-1-.08 (West, WESTLAW through March 31, 2000); Mich.Stat.Ann. 207.212, Sec. 2(3) (West, WESTLAW through 2000, No. 100 Reg. Sess.); N.Y Tax Law § 523 (McKinney 1997); Wyo.StatAnn § 39—17—107 (West, WESTLAW through 2000 Budget Sess.).