152 N.J. Super. 442 (1977)
378 A.2d 38
NEW JERSEY BELL TELEPHONE COMPANY, PETITIONER-APPELLANT AND CROSS-RESPONDENT,
v.
DIRECTOR, DIVISION OF TAXATION, RESPONDENT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1977.
Decided August 15, 1977.
*443 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Bernard M. Hartnett, Jr. argued the cause for appellant and cross-respondent New Jersey Bell Telephone Company (Mr. Bernard M. Hartnett, Jr., and Mr. Edward Evans, attorneys).
Mr. Herbert K. Glickman, Deputy Attorney General, argued the cause for respondent and cross-appellant Director, Division of Taxation (Mr. Robert J. Del Tufo, Acting Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Douglas G. Sanborn, Deputy Attorney General, on the brief).
PER CURIAM.
Petitioner New Jersey Bell Telephone Company appeals from a determination of the Division of Tax Appeals holding that revenues received by it for non-recurring charges for service connections, installations, moves and changes of all types and kinds of telephone facilities are subject to the New Jersey Sales and Use Tax, N.J.S.A. 54:32B-1 et seq.
The Director cross-appeals from a determination of the Division which holds revenues received by petitioner for audio and video transmission services are not subject to the act.
N.J.S.A. 54:32B-3 imposes a sales tax upon:
(a) The receipts from every retail sale of tangible personal property, except as otherwise provided in this act.
(b) The receipts from every sale, except for resale, of the following services:
* * * * * * * *
(2) Installing tangible personal property, or maintaining, servicing, repairing tangible personal property not held for sale in the regular course of business * * *.
N.J.S.A. 54:32B-8, which contains 32 categories of exemptions, provides, in pertinent part:
*444 Receipts from the following shall be exempt from the tax on retail sales imposed under subsection (a) of section 3 and the use tax imposed under section 6:

* * * * * * * *
(g) Sales of gas, water, steam, fuel, electricity, telephone or telegraph services delivered to consumers through mains, lines, pipe, or in containers or bulk;

* * * * * * * *
The Director determined that (1) since telephone instruments or facilities are "tangible personal property" within the meaning of § 2(g), receipts for installation charges are taxable pursuant to § 3(b) (2); (2) such receipts proposed to be taxed under § 3(b)(2) are not exempted by § 8(g) because the exemptions listed therein are only applicable in instances where the tax has been imposed under § 3(a); (3) since receipts from audio and video transmissions constitute the leasing of tangible personal property, they are taxable under § 3(a), and (4) such receipts do not constitute the sale of general telephone services within the meaning of § 8(g).
The Division of Tax Appeals affirmed the Director's determination as to nonrecurring installation charges but reversed his decision as to audio and video transmission signals, finding that these transmissions are exempt as they clearly come within the meaning of "telephone services" contained in § 8(g). In this regard he pointed out that the Director erred in viewing these transmissions since a leasing or licensing arrangement to use petitioner's equipment as they are clearly in the nature of a service to its customers, and the Legislature, probably being aware of the fact that telephone companies are presently in the business of providing many communication services, must have used the words "telephone services" in § 8(g) with the intention of including "communication services" provided by them as of the date of the act.

I
Petitioner argues that the tax appeals judge erred in ruling that the nonrecurring installation charges are taxable *445 pursuant to § 3(b)(2), emphasizing that such charges are exempt since they constitute an integral part of "telephone services" within the meaning of § 8(g). It claims that such a construction of the act is supported by (a) the answers to a series of questions provided by the Sales Tax Bureau in its pamphlet, "What New Jersey Sales Tax Means To You," which suggest that the Legislature intended to exempt "telephone services" without limitation; (b) there is no logical basis for distinguishing initial access to the telephone exchange network from the rest of telephone service; (c) since labor costs for the installation of equipment represent only a small portion of the cost for a service connection, and merely constitute a method by which petitioner recovers a portion of the total cost for providing the service, such charges are not installation charges per se but should be considered as part of the general cost for telephone service, and (d) a majority of out-of-state legislatures have treated service connection charges as an integral part of "telephone services."
Nonrecurring charges are billed to customers as a result of service order activity. This activity involves the service connection, move or change of a subscriber's basic service. Nonrecurring charges also come into play when customers add, move or change supplemental services such as extensions, premium telephones or custom calling services in the residential market, and extensions, key telephone equipment, switchboards, special toll services or channel services in the business market. Thus, there are service connection, move and change charges which normally apply to basic services and installation charges which cover order activity for supplemental and premium services.
The vast majority of service order work involves the connection of new service for customers. Customers also ask for the movement of service, change and substitution of service, additions to service and, ultimately, the disconnection of their service. The connection work is the majority of the orders.
*446 Petitioner provides telecommunications services to customers who subscribe to the ability to communicate as contrasted with buying a product. In order to provide the service, certain instrumentalities must be installed at customers' premises. Since customers have different communications needs, the nature of each such installation tends to differ and the aggregate price to each customer is dependent upon the service arrangement for which he subscribes, but these instrumentalities are provided only in connection with a charge for the service and service arrangement and there is no sale of these instrumentalities in the ordinary sense; there is no transfer of title. Instead, the equipment is a New Jersey Bell asset through which the service is furnished and, while there may be some relationship between the aggregate rates for the arrangement and its costs, there is no cost-rate relationship as regards the nonrecurring, recurring or usage price aspect.
Under our reading of the act we perceive a clear intention by the Legislature to exclude and exempt from taxation all revenues for "telephone services," which include those related to service connections, moves and changes.
The Sales Tax Act was designed so as to levy a tax upon all sales of tangible personal property unless otherwise exempted (§ 3(a)), and to levy tax only upon the sale of those services expressly enumerated as being subject to taxation (§ 3d(b)). Thus, if the Legislature intended to tax telephone service, it would have expressly included them within taxable services under section 3(b). Conversely, had the Legislature intended to exclude telephone services from tax liability, it merely would have had to omit them entirely. The Legislature did not subject telephone services to the sales tax, nor did it tax any other communication services.
In addition to exclusion by omission, the Legislature expressly exempted "telephone services" under § 8(g), quoted above and certain sales of communication equipment under § 8(m) (3):
*447 Sales of telephone lines, cables, central office equipment or station apparatus, or other machinery, equipment or apparatus, or comparable telegraph equipment, for use directly and primarily in receiving at destination or initiating, transmitting and switching telephone or telegraph communication.
We believe that the Legislature adopted this statutory pattern so as to insure that "telephone services" in their broadest sense would be exempt from sales taxation. The expressed exemptions were added to guard against the possibility that those generalized services which were specifically subjected to tax would not be erroneously taxed against the telephone consumer.
While there is a dearth of legislative history behind the enactment of the sales tax, we deem it significant that the same Legislature that enacted the sales tax also enacted a reformation of the business personal property tax (L. 1966, c. 138, § 1) which eliminated the tax on personal property except that property "used in the business of telephone, telegraph and messenger systems, companies, corporations or associations subject to tax under Chapter 4, laws of 1940, as amended." Pursuant to N.J.S.A. 54:4-2.47 and 48 petitioner continues to pay taxes on the book value of its personal property to each municipality in which such property is located. We think that these two legislative acts, the product of the same Legislature, read in pari materia, demonstrate that the legislative intent was to avoid duplicative taxation on the consumer of telephone service.
The Division of Tax Appeals, in upholding the taxability of the nonrecurring service charges, relied on the rule of statutory construction which holds that an exemption claimed under taxation statutes must be construed strictly against him claiming the exemption, see e.g., Congregation B'Nai Yisroel v. Millburn Tp., 35 N.J. Super. 67, 72 (App. Div. 1955), and that the burden of proving tax-exempt status is on the taxpayer. Bloomfield v. Academy of Medicine of N.J., 47 N.J. 358 (1966); Princeton Univ. Press v. Princeton Borough, 35 N.J. 209 (1961). However viable *448 this rule, it does not require the courts to destroy the fair intendment of the statutory language. Congregation B'Nai Yisroel, above, 35 N.J. Super. at 72. In addition, as was pointed out by our Supreme Court in Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521 (1964):
An administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows. See Adams v. Atlantic County, 137 N.J.L. 648, 652 (E. & A. 1948); City of Camden v. Local Government Board, 127 N.J.L. 175 (Sup. Ct. 1941); 1 Davis, Administrative Law §§ 5.05, 5.06 (1958). These principles are particularly compelling with respect to the interpretation of tax statutes. As was said in Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211, 213 (1917):
"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen." [at 528-529]

II
The Director argues that the tax appeals judge erred in viewing audio and video transmissions, which are one-way transmissions, as part of general "telephone services" which are two-way transmissions. It is suggested that such an interpretation necessitates a finding that "telephone services" includes activities such as closed circuit television signals.
Petitioner provides audio and video transmission services which essentially provide for the electrical transmission of information from one location to another location; that is, petitioner accepts a signal at point A and delivers it to point B. This signal in most audio and video cases is delivered to petitioner electrically, whereas in many cases of basic exchange services, petitioner provides a telephone instrument to convert the voice into a signal and back again.
In cases of customer-owned PBX's, customer-owned station equipment and privately owned telephones petitioner does not always provide such an instrument and frequently *449 the signal is accepted from the customer in electrical form and is delivered to him in electrical form. The transmission link is the same.
The customer actually does the transmission and reception; that is, in a telephone he talks into the telephone and that is the actual transmission.
In a video show the customer provides the camera which is actually putting out the signal. Petitioner provides the means of carrying the signal from one place to another and transports or transmits the signal.
Both the customer and petitioner own portions of the facilities. The camera, the television receivers, microphones et cetera, are typically owned by the customer. The intermediate part, the means of carrying the signal, is owned by petitioner.
The Division of Tax Appeals determined that under the facts submitted in this case it was unable to find that petitioner leases any of its equipment to its customers. Nor that there had been presented any facts to justify a finding that service afforded is a "license to use" the tangible personal property of the telephone company by the customer, and that actually what petitioner is furnishing to its customers is a service.
The tax appeals judge concluded:
The telephone business is a public utility. Audio and video transmissions are communication services included within its business. At the time of enactment of the Sales Tax Act, the Legislature knew or should have known that telephone companies were providing audio and video transmissions. As of the date of the Act's enactment, it was of general public knowledge that the telephone companies were providing services not only as outlined in Webster's definition, supra, of "telephone", but also the many communication services as described by petitioner's two witnesses. The science of communications is constantly being improved and modernized.
I expressly find that in using the words "telephone service" in the Section 8(g) exemption, the Legislature included therein communication services as provided by telephone companies as of that date.
Audio and video transmissions constitute a "telephone service" as contemplated by Section 8(g), therefore, the revenue derived therefrom is specifically exempted from the Sales Tax Act.
*450 In addition, assuming arguendo that audio and video transmission are not "telephone services", they are clearly communication services which are neither a "lease" nor "license to use" as delineated by Section 2(f). As communication services, they are not subject to the Sales Tax under Section 3(b) and are, therefore, excluded from its terms.
We agree with his reasoning and conclusion.
The judgment of the Division of Tax Appeals insofar as it subjects the nonrecurring service charges to the provisions of the Sales and Use Tax Act is reversed. In all other respects it is affirmed.
HORN, J.A.D. (concurring).
Although I am in accord with the majority in its determination, I am impelled to add certain comments and observations which have also influenced my conclusion.
The New Jersey Legislature enacted the Sales and Use Tax Act (act), N.J.S.A. 54:32B-1, et seq.,[1] in 1966. It became effective on July 1, 1966 by virtue of § 31, which was repealed by L. 1976, c. 73.
The act was obviously drawn from the corresponding New York Sales and Compensating Use Tax Law, L. 1965, c. 93; McKinney's Consolidated Laws of New York Annotated, #1101 et seq. The format of the act is apparent. Subsection 3(a) generally imposes the tax upon the receipts from retail sales of "tangible personal property," as defined in the definition section, particularly subsection 2(g). Subsection 3(b) generally imposes the tax on receipts from the sale of services specifically enumerated in subsections 3(b) (1) to (5) inclusive. Subsection 3(c) generally imposes the tax on receipts from the sale of food and drink in restaurants, taverns and similar establishments as well as by caterers, as specifically enumerated in subsections 3(c) (1) to (3). Subsections 3(d) and (e) respectively impose the *451 tax generally on receipts from transient room rentals and admission charges to places of amusement, including athletic and other activities, as well as motion picture theatres.
Section 6 complements § 3 by imposing a use tax upon certain categories enumerated therein, which are neither exempted under the act nor subject to the sales tax thereunder. Cf. Annotation, "Validity of use tax exemption having no complementary exemption under sales tax," 85 A.L.R.2d 1043 (1962).
Section 8 specifies 32 categories the receipts from which are exempt from "the tax on retail sales imposed under subsection (a) of section 3 and the use tax imposed under section 6". Included among these categories are not only sales of tangible personal property which would otherwise be subject to the tax under subsection 3(a) but also categories of services which would otherwise be subject to tax under subsection 3(b). Examples of the latter include transportation of persons or property (8(k)) and repairs, alterations, etc., of commercial ships (8(1)).
Section 1105 of the New York statute furnished the basis for § 3 of our act. Section 1115 of the New York statute furnished the basis for § 8 of our act. A comparison of these sections indicates to me that although it is probably true, as stated by the majority, that subsection 8(g) was enacted to insure that "telephone services" would be exempt from sales taxation, the Legislature made a drafting error in exempting receipts from sales of telephone services "from the tax on retail sales imposed under subsection (a) of section 3". I believe the Legislature intended to apply the enumerated exemptions to subsections (b) as well as (a) of § 3.
To elaborate further, since subsection 3(b) purports to specify particularly services the receipts from which are taxable and did not include telephone service, it was hardly necessary to enact subsection 8(g) in order to exempt receipts from telephone service. As stated, subsection 3(a) pertains only to sales of tangible personal property and *452 subsection 3(b) only to sales of specific services. Yet § 8 is hybrid in nature, in that it purports to exempt not only sales of tangible personal property (coming under subsection 3(a)) but also sales of telephone services, which would have been specified under subsection 3(b) if the Legislature intended to impose the tax on that service.
Although the New York statute was the prototype of our own, that statute, unlike ours, imposed the tax on receipts from telephone-service sales and what are generally considered as utility services.
Thus, New York's subsection 1105(b) imposed a tax upon
(b) Receipts from every sale, other than sales for resale, of gas, electricity, refrigeration and steam, and gas, electric, refrigeration and steam service of whatever nature, and from every sale, other than sales for resale, of telephony and telegraphy and telephone and telegraph service of whatever nature except interstate and international telephony and telegraphy and telephone and telegraph service.
New York's subsections 1115(b) (i) and (ii) exempted telephone service "used by newspapers, radio broadcasters and television broadcasters in the collection or dissemination of news," as well as gas, electric, refrigeration and steam service for use or consumption directly and exclusively in research and development in the experimental or laboratory sense "from the tax imposed under subdivision (b) of section eleven hundred five."
The New York statute, in exempting in one section, 1115(c), certain tangible personal property as well as certain services, appropriately referred to the two subsections, (a) and (b), of § 1105 which generally imposed the taxes on receipts from the sale of tangible personal property and also services.
Since there is a distinct possibility that the Legislature unintentionally omitted subsection (b) of § 3 in the first paragraph of § 8, the Director's principal argument, which was adopted by the Division of Tax Appeals  that the exemption is applicable only to sales referred to in subsection *453 3(a)  loses its force. If one construes the act as if subsection 8(g) were superfluous, that construction fortifies the concept that receipts from telephone services as such were intended to be exempt from taxation under the act.
As the majority states, "`Telephone services' [includes] those [receipts] related to service connections, moves and changes."
The deliberate legislative intent of not imposing the tax on nonrecurring charges is also demonstrated by considering what is included in the phrase "telephone service." Petitioner neither sells nor leases its communication equipment or facilities. It merely offers the use of its entire network to those who contract with it for such service. As contended by petitioner, "[t]he telephone receiver is but one portion of that entire network, albeit a most essential one. The telephone set is indispensable simply because it provides the customer with access to the entire switched telephone exchange and toll message network * * *."
Implicit in the contract for telephone service is the understanding that the telephone itself will be installed. The customer has no choice as to whether he will use a telephone as part of the service provided by petitioner. Installation of the telephone is unquestionably as basic in providing the service as the installation of all the other network components. In its broad sense the word "telephone" constitutes a generic term, having reference generally to the art of telephony as an institution, but more particularly to the apparatus, as an entirety, ordinarily used in the transmission as well as in the reception of telephonic messages. Application of Radio-Fone, Inc., 187 Neb. 637, 193 N.W.2d 442 (Sup. Ct. 1972); Commercial Communications v. Public Utilities Comm'n, 50 Cal. 2d 512, 327 P.2d 513 (Sup. Ct. 1958), app. dism. and cert. den., City of Los Angeles v. Public Utilities Commission of Cal., 359 U.S. 119, 341, 79 S.Ct. 722, 3 L.Ed.2d 674 (1959); Hockett v. State, 105 Ind. 250, 5 N.E. 178 (Sup. Ct. 1886). I *454 view the words of the act, "telephone service," as clearly including the terminal communicating instrument as part of the telephone service provided within the quoted phrase.
Of 47 jurisdictions which have enacted sales and use tax legislation, 38 treat the taxability of revenues from telephone-service connections in the same manner as they treat the taxability of revenue from other telephone service in general. That is to say, all 38 states either tax or exclude revenues from both telephone service and telephone-service connections. See Appendix, 1.
Significantly, a number of jurisdictions tax service-connection charges as part of general telephone service, without regard to the fact that general installation charges are otherwise exempt under their sales and use tax laws. See Appendix, 2.
Although there are some states which distinguish the tax treatment of telephone-service revenues from telephone-connection charges by taxing the former and excluding the latter (see Appendix, 3), two of those, Nebraska and Indiana, specifically exclude installation-charge revenues, thereby implying that ordinarily they would not be taxed because telephone-service revenues were excluded. Of the nine, three others, Georgia, Minnesota and South Carolina, impose their taxes only on revenues from certain specified services which comprise less than full telephone service.
Not one of the mentioned 47 jurisdictions taxes revenues from service connections where telephone services were specifically exempted or excluded from taxation.
It is interesting to note that Congress has always viewed service-connection charges to be part and parcel of telephone service and had to use specific language to exempt telephone-connection charges when it desired to do so. In the Revenue Act of 1941, § 548, a 6% excise tax was levied on the amount paid by the subscriber for "local * * * and * * * other * * * telephone service." Excepted expressly from this tax were any "amounts paid for the installation of instruments, wires, poles, switchboards, *455 apparatus and equipment * * *." Between 1941 and 1958 the excise tax was extended to cover certain other telephone service in the private-line area, i.e., wire-mileage tax and wire-and equipment-service tax. The charges for installation of these services were automatically taxed, since they were not specifically exempted, for as noted above the exemption applied only to local and certain other types of service. In 1958 the present exemption for all telephone-installation charges was enacted, 26 U.S.C.A. § 4253(g).
As noted in the majority opinion, the Sales Tax Bureau disseminated a pamphlet by which in the form of questions and answers it suggested that "telephone services" were exempted from the tax without limitation.
This pamphlet was distributed in June 1966, before the effective date of the act, "for the guidance of those who must pay these taxes as well as those who must collect them." Under the caption "Sales, Rental and Use of Tangible Personal Property" in said booklet appeared the following:
Q. Are utility bills taxable?
A. Consumers' utility service, including telephone and telegraph, gas, water, electricity, steam, refrigeration services and fuel are exempt.
On December 31, 1970 the Division of Taxation for the first time made a claim for taxes under the act for the interval commencing July 1, 1966 through September 30, 1970, relating to the foregoing nonrecurring charges and for audio-video transmission services. This claim also included taxes on two other categories of charges with which we are not presently concerned.
Although the initial construction of the act by the Director is not conclusive, nevertheless that construction is persuasive. Civil Service Dep't v. Clark, 15 N.J. 334 (1954); Automatic Merchandising Council v. Glaser, 127 N.J. Super. 413 (App. Div. 1974); Jersey City Housing Auth. v. Civil Service Dep't, 87 N.J. Super. 146 (App. Div. 1965). The Director's apparent concurrence in the Bureau's construction is amply *456 exhibited by his failure to take any action for about four years toward collection of the taxes now claimed.
Similarly, in Automatic Merchandising Council v. Glaser, supra, for the first four years after the enactment of the act the Director had held that certain coin-operated vending machine sales were exempt. The Division of Tax Appeals upheld his subsequent reversal of this position. In reversing, the Appellate Division stated:
* * * [T]here is a well accepted principle that the practical administrative construction of a statute over a period of years without interference by the Legislature is evidence of its conformity with the legislative intent and should be given great weight by the courts. Housing Auth. of Jersey City v. Dept. of Civil Service, 87 N.J. Super. 146, 149 (App. Div. 1965). Here, it has been stipulated by the parties that the exemption afforded by subsection 8, subsection (i) was interpreted from its effective date of July 1966 through July 1970 by the Director to include sales of food and drink through automatic vending machines. During such time period the section was amended without any change in the exemption granted to such sales, thus giving further support to the conclusion that the Legislature intended * * * the exemption * * * [127 N.J. Super. at 420]
Accordingly, I concur with the view of the majority that the nonrecurring charges are not and never were intended to be subject to the taxation imposed by the Act.
In large measure the foregoing reasoning is applicable to the question of whether receipts from audio-video program-transmission service are taxable. However, I am completely in accord with the majority's stated reason for holding that they are not subject to taxation under the act.

Appendix
1. The following 18 jurisdictions tax revenues from telephone service and from telephone-service connections.
Arizona (Ariz. Rev. Stat., § 42-1301 et seq.)
Colorado (Col. Rev. Stat., § 39-26-101 et seq.)
Florida (Fla. Stat. Ann., § 212.01 et seq.)
Iowa (Iowa Code Ann., § 422.42 et seq.)
Kansas (Kan. Stat. Ann., § 79-3061 et seq.)
Kentucky (Baldwin's Ky. Rev. Stat., § 139.010 et seq.)

*457 Maine (Maine Rev. Stat. Ann., § 36-1751 et seq.)
Michigan (Mich. Stat. Ann., § 7.555[1] et seq.; M.C.L.A. § 205.91)
Mississippi (Miss. Code 1972 Ann., § 27-65-1 et seq.).
Missouri (Vernon's Ann. Mo. Stat., § 144.010 et seq.)
New Mexico (N. Mex. Stat. Ann. 1953, § 72-16A-1 et seq.)
New York (McKinney's Consol. Laws of New York Ann., Tax § 1101 et seq.)
Oklahoma (Okl. Stat. Ann., § 68-1301 et seq.)
Pennsylvania (Purdon's Pa. Stat. Ann., § 72-7101 et seq.)
Rhode Island (General Laws of R.I., § 44-18-1 et seq.)
Tennessee (Tenn. Code Annotated, § 67-3001 et seq.)
Wisconsin (Wisconsin Statutes Annotated, § 77.51 et seq.)
Wyoming (Wyo. Stat., § 39-286 et seq.)
The following 19 states and the District of Columbia exempt or exclude both telephone service and telephone-service connection revenues from the tax:
Alabama (Code of Alabama, § 51-786[2] et seq.)
Alaska (Alaska Stat., § 29.53.415 et seq.)
California (Ann. Cal. Codes, Rev. & T, § 6001 et seq.)
Connecticut (Conn. Gen'l. Stat. Ann., § 12-406 et seq.)
District of Columbia (D.C. Code, § 47-2601 et seq.)
Hawaii (Hawaii Rev. Stat., § 237-1 et seq.)
Idaho (Idaho Code, § 63-3601 et seq.)
Illinois (Smith-Hurd Ill. Ann. Stat., ch. 120 § 440 et seq.)
Louisiana (La. Rev. Stat., § 47:301 et seq.)
Maryland (Annotated Code of Maryland, Art. 81 § 324 et seq.)
Massachusetts (Ann. Laws of Mass., § 64H-1 et seq.)
Nevada (Nev. Rev. Stat., § 372.010 et seq.)
New Jersey (supra)
North Carolina (Gen'l Stat. of N.C., § 105-164-1 et seq.)
Ohio (Page's Ohio Rev. Code. Ann., § 5739.01 et seq.)
Texas (Vernon's Civ. Stat. of Tex., Tax Gen., Art. 20.01 et seq.)
Vermont (Vt. Stat. Ann., § 32-9701 et seq.)
Virginia (Code of Va., § 58-441.1 et seq.)
Washington (Rev. Code of Wash. Ann., § 82.08.010 et seq.)
West Virginia (W. Va. Code, § 11-15-1 et seq.)
2. Arizona, Colorado, Kentucky, Maine, Michigan, Missouri, Oklahoma and Rhode Island.
3. Arkansas, Georgia, Indiana, Minnesota, Nebraska, North Dakota, South Carolina, South Dakota and Utah.
NOTES
[1] Hereafter particular sections of the act may be referred to by their section numbers only.