CONLEY, J.T.C.
This is a sales tax case involving charges by plaintiff for ticker-tape machines (“printers”) and cathode ray tubes (“CRTs”) used in the printing and display of the Dow Jones News Service. The parties agree that plaintiff’s receipts from the News Service itself are not subject to the New Jersey Sales and Use Tax because the News Service does not fall within any of the enumerated services that are taxed by the act. N.J.S.A. 54:32B-3(b). However, the receipts from every retail sale of tangible personal property are subject to the tax unless expressly exempted. N.J.S.A. 54:32B-3(a). In a routine audit for the period of January 1, 1976 through December 31, 1978 the Director ascertained that plaintiff had billed its subscribers separately for the News Service and for its printers and CRTs. Plaintiff had not reported receipts in connection with such equipment on its sales tax returns. As a result of his audit the Director imposed a deficiency assessment of $22,669.71 plus penalty and interest, on the basis of plaintiff’s New Jersey receipts attributable to the specified equipment. Plaintiff instituted this action to set aside the Director's assessment in all respects.
Plaintiff is engaged in the business of gathering, editing and publishing news, with emphasis on business and financial news. In addition to the News Service, plaintiff publishes the Wall Street Journal, Barron’s National Business and Financial Weekly and the Ottaway newspapers. Plaintiff has a large staff of reporters and writers located in major cities who serve both the Wall Street Journal and the News Service. The News Service also obtains and uses information from other major nev/s wire services, such as United Press International and the Associated Press. The News Service provides its subscribers with a broad range of general business and financial news, including stock and bond prices, stock market averages, exchange rates, earnings reports, merger reports and market trends. Plaintiff transmits the News Service from New York to 800 major cities through a nationwide network of private teleprinter lines leased from American Telephone & Telegraph Company. The News *185 Service is transmitted continually to subscribers’ printers and CRTs from 8:00 a.m. to 6:30 p.m., Monday through Friday.
Subscribers execute a printed agreement with plaintiff for the News Service. In the agreement they may elect, at an additional charge, to receive equipment from plaintiff for displaying the information that is transmitted. The equipment available during the audit period was a printer or “ticker” (a DJ300) and a television-type viewer or CRT (the Dow Vue). Printers provide hard copy of the information, called a news file or tape, and Dow Vues display the information on a viewing screen. Plaintiff in all cases retains title to its printers and Dow Vues and provides all installation, maintenance and relocation of the equipment even though the subscribers have possession of the equipment. Subscribers may turn the equipment on and off, adjust the contrast and replenish the ink and paper supply of the printers when necessary. The DJ300 printer can “access” or obtain information only from the News Service and it may only be obtained by subscribers to the News Service. The Dow Vue obtained from plaintiff cannot access other data bases as do other CRTs provided by other equipment vendors. In place of the Dow Vue, subscribers may use CRTs or display screens provided by vendors of such equipment licensed by the News Service. However, plaintiff refuses to provide the News Service to a subscriber who uses printing and display equipment not authorized by plaintiff. In its monthly bills for the period at issue plaintiff separated its charges for subscribers to the News Service into two categories: one for the News Service alone and another for the printers and/or Dow Vues obtained by subscribers from plaintiff. The sales tax assessment at issue was made in connection with the latter category of charge.
Although a number of legal issues advanced by plaintiff were specified in the pretrial order, plaintiff relies on only two theories in the various briefs it has filed in this court. Plaintiff argues first that all receipts from the News Service, including separately itemized charges for the equipment on which the News Service is printed and/or displayed, are exempt *186 from sales tax pursuant to N.J.S.A. 54:32B-8.5 [1] as receipts from the sale of newspapers. Plaintiff’s other argument is that receipts from the separate charges for its printers and CRTs are exempt from sales tax because the use of such equipment is only incidental to the “real object” of the transaction between plaintiff and its subscribers, which is receipt by a subscriber of the admittedly exempt News Service. Plaintiff does not rely on any specific exemption provision in support of its second contention. Rather, plaintiff relies on what it contends is “the general tax law principle that, where tangible personal property is ‘incidentally’ furnished in connection with an underlying service which is tax-exempt, the incidental property is likewise exempt.” Plaintiff states that “[t]his principle is well-established by case law in New Jersey and elsewhere.”
Plaintiff’s second theory has no merit. There is no “general tax principle” in New Jersey regarding exemption from taxation. On the contrary, an exemption from taxation must be clearly established by a legislative enactment. Brick Stores, Inc. v. Bridgewater Tp., 4 N.J.Tax 412, 416 (Tax Ct.1982). Furthermore, the exemptions which have been enacted must be strictly construed against the claimed exemption. Container Ring Co. v. Taxation Div. Director, 1 N.J.Tax 203, 208 (Tax Ct.1980), aff’d o.b. 4 N.J.Tax 527 (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981). These are elementary principles of the tax law of this State.
Even if plaintiff’s second theory were not contrary to settled law, the cases cited by plaintiff do not stand for the proposition for which plaintiff advances them. The first such case is N.J. Bell Tel. Co. v. Taxation Div. Director, 152 N.J.Super. 442, 378 A.2d 38 (App.Div.1977), certif. den. 75 N.J. 594, 384 A.2d 824 (1978). Plaintiff states that in this case the Appellate Division held that separately itemized telephone equipment charges were not subject to sales tax because they were furnished in connec *187 tion with and solely to facilitate the customer’s use of an underlying — and tax-exempt — telephone service. This is an inaccurate characterization of the holding in the N.J. Bell Tel. Co. case. The issue there did not involve charges for the use of equipment, and consequently the court did not determine that the charges for equipment use were “incidental” to the service provided and therefore exempt. Rather, the assessment contested in that case was based on nonrecurring service order charges such as for the connection of new telephone service for customers or changes to or disconnection of customer service. The court concluded that the Legislature intended “to exclude and exempt from taxation all revenues for ‘telephone services,’ which include those related to service connections, moves and changes.” 152 N.J.Super. at 446, 378 A.2d 38. Accordingly, the only case from this jurisdiction relied on by plaintiff does not support its position.
Plaintiff also relies on cases from other jurisdictions. The first such case is Quotron Systems, Inc. v. Comptroller, 287 Md. 178, 411 A.2d 439 (Ct.App.1980). The facts in Quotron are similar to the facts in the present case. The question in Quotron was whether a company which provided information services, and which made available to its subscribers the computer hardware upon which to receive those services, was subject to the Maryland use tax on that part of its monthly charges attributable to the use of the hardware. The court held that the taxpayer was not subject to the Maryland use tax. The basis for the court’s determination was that there was no taxable “use” of Quotron’s hardware by its subscribers, as defined by the Maryland statute. The statute required either a transfer of title or possession, or a lease, rental or grant of a license to use the relevant tangible personal property.
The section of the Maryland statute involved in Quotron was different from the section of the New Jersey statute involved in this case in a significant respect. The New Jersey tax for which the assessment was made against plaintiff is not a use tax but a sales tax. The sales tax is assessed against receipts from most *188 retail sales of tangible personal property and receipts from the sale of enumerated services; it does not require a finding of taxable “use.” Because of this distinction, the reasoning of the Quotron case is not relevant to the present matter.
The third case which plaintiff contends is on all fours with the present case is Avco Broadcasting Corp. v. Lindley, 53 Ohio St. 2d 64, 7 0.0.3d 145, 372 N.E.2d 350 (Sup.Ct.1978). Avco dealt with an Ohio sales tax assessment against a broadcasting corporation on two separate types of transactions: purchases of news and wirephoto services from the Associated Press and purchases of radio and television rating services from numerous other companies. Only the Associated Press portion of the opinion is relevant to this case. Avco challenged the assessment relating to the Associated Press on the grounds that the transaction was the purchase of a personal service and as such was exempt under a specific provision of the Ohio sales tax act. The Ohio statutory language involved in Avco, which is identical to N.J.S.A. 54:32B-2(e)(3)(A), was as follows:
Other than as provided in this section, “sale” and “selling” do not include professional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made.
Although the Associated Press placed a teleprinting machine and a photograph receptor at Aveo’s facilities and provided printed news stories, there does not seem to have been a separate charge for either the equipment or the printed stories, all of which were tangible personal property within the meaning of the quoted statute. That factor alone distinguishes Avco from the present case in which there was a separate charge for plaintiff’s equipment. Nonetheless, in a one-paragraph disposition of this issue the court held that Avco’s purchase of the news service, including its receipt of the aforementioned tangible personal property, fell outside the statutory definition of taxable sale. 372 N.E.2d at 353. In so doing, the court reasoned that the “real object” of the transaction between the parties had been the rendition of a “professional ... or personal service” and not the transfer of tangible personal property. Id.
*189 Dow Jones argues that its provision of equipment should be exempt from tax by virtue of the “real object” test. Cf. Spencer Gifts, Inc. v. Taxation Div. Director, 182 N.J.Super. 179, 202-204, 3 N.J.Tax 482, 505-507, 440 A.2d 104 (Tax Ct. 1981). However, as both this court in Spencer Gifts and the Ohio court in Avco made clear, the real object test applies only in the context of N.J.S.A. 54:32B-2(e)(3)(A), quoted above, and its counterpart in the Ohio statute. Both of these statutory sections create an exclusion from the definition of taxable retail sale. The “real object” test was developed by courts solely as a guideline for analyzing certain service transactions which incidentally and without charge involve the transfer of tangible personal property to the person receiving the service. For example, when an attorney prepares a will for a client he transfers a written document to the client but his legal fee is for services rendered and not for the paper itself. In enacting N.J.S.A. 54:32B-2(e)(3)(A) the Legislature made it clear that such a transaction would not be deemed to be a retail sale of tangible personal property but rather would remain an exempt professional service. See Spencer Gifts, Inc. v. Taxation Div. Director, supra.
Thus, the inquiry with respect to the “real object” test is whether the provision by plaintiff of its printers and CRTs falls outside the definition of taxable sale as limited by N.J.S.A. 54:32B-2(e)(3)(A). On this point Dow Jones forthrightly concedes that its printers and CRTs do not qualify for an exemption under N.J.S.A. 54:32B-2(e)(3)(A) “since they are admittedly the subject of a separate charge to subscribers and, in addition, the News Service is not a ‘personal service’ ” within the intent of that section. For the reasons expressed by plaintiff the court cannot find plaintiff to be entitled to an exemption pursuant to N.J.S.A. 54:32B-2(e)(3)(A). Plaintiff’s contention premised on the “real object” test is therefore inappropriate.
Even if the “real object” test were applicable, this court could not find that plaintiff’s provision of printers and CRTs during the years in question was “incidental” or “inconsequen *190 tial” to the provision of the exempt News Service. In the first place, plaintiff’s policy of terminating the News Service to any subscriber found using unauthorized equipment belies any contention that the use of plaintiff’s equipment is not an important and integral element of the News Service. Secondly, plaintiff’s promotional brochure designed to market the News Service to prospective subscribers states at the outset: “we deliver it any way you want it.” Under the most prominent heading in the entire document, which is “SELECT THE SYSTEM THAT FITS YOUR NEEDS,” the brochure stresses the following message:
SUIT YOURSELF
You pick the delivery means. There is the traditional hard copy printer delivery which gives you a story you can truly put your hands on, a story you can pass immediately to colleagues or clients or tuck away in your files for future reference.
The same news can flash before your eyes on a desktop video display terminal ... or on a wall-mounted viewing board visible to many. These electronic delivery methods are quiet, efficient, convenient. [Emphasis in original]
This language makes it impossible for the court to accept the statement in plaintiff’s brief that “[t]he means by which the service is delivered is a matter of complete indifference to the subscriber.”
Plaintiff’s other basic position in this case is that the separate charges it makes for printers and CRTs come within the specific sales tax exemption for receipts from the sale of newspapers. The full statutory provision is as follows:
Receipts from sales of newspapers, magazines and periodicals are exempt from the tax imposed under the Sales and Use Tax Act. [N.J.S.A. 54:32B-8.5]
Plaintiff begins its argument on this point with the flat statement that “[n]o statute, regulation or case in New Jersey provides a definition of the term ‘newspaper.’ ” Based on this premise, plaintiff argues that the court should adopt a definition of the term similar to ones used by New York courts in reported and unreported decisions and by the United States Court of Claims. Plaintiff contends that such a definition would encompass the Dow Jones News Service. Plaintiff’s premise, however, *191 is simply wrong. Although the term “newspaper” has not been defined in connection with the New Jersey Sales and Use Tax Act, Del Val Pennysaver, Inc. v. Taxation Div. Director, 3 N.J.Tax 164, 168-169 (Tax Ct.1981), rev’d on other grounds 188 N.J.Super. 108, 456 A.2d 115 (App.Div. Jan. 24, 1983), the Legislature has clearly defined the term in a context readily applicable to the statute involved in this case.
In N.J.S.A. 2A:84A-21a, commonly referred to as the “Shield Law” (and also adopted as Evid.R. 27, the newsperson’s privilege), the Legislature defined “news media,” “newspaper” and “wire service” separately, as follows:
a. “News media” means newspapers, magazines, press associations, news agencies, wire services, radio, television or other similar printed, photographic, mechanical or electrical means of disseminating news to the general public.
c. “Newspaper” means a paper that is printed and distributed ordinarily not less frequently than once a week and that contains news, articles of opinion, editorials, features, advertising, or other matter regarded as of current interest, has a paid circulation and has been entered at a United States post office as second class matter.
g. “Wire service” means a news agency that sends out syndicated news copy by wire to subscribing newspapers, magazines, periodicals or news broadcasters.
See, also, N.J.S.A. 35:1-1 et seq. for standards applicable to legal newspapers.
By its proofs in this case plaintiff established that it is one of the four major news-wire services in the world, its major competitors being the Associated Press, United Press International and Reuters Economic Services. Plaintiff’s subscribers include newspapers, magazines, radio stations and the other major wire services, all of which fall within the above definition of “news media.” Both the New York and American Stock Exchanges distinguish between plaintiff and its competitors on the one hand and newspapers on the other. The news-wire services are relied on by the financial community to disseminate news immediately, whereas newspapers are not. Moreover, there was no proof at trial that the News Service has ever been entered at a United States post office as second class matter, *192 one of the prerequisites to its being considered a newspaper under the terms of N.J.S.A. 2A:84A-21a. It is obvious from these considerations that plaintiff’s News Service falls squarely within the Legislature’s definition of wire service and not within its definition of newspaper. Accordingly, plaintiff does not come within the term “newspaper” as it appears in N.J.S.A. 54:32B-8.5 and it cannot benefit from that exemption from the sales tax.
The Director’s assessment is affirmed in all respects for the reasons set forth in this opinion. The Clerk of the Tax Court shall enter an appropriate judgment.

This exemption was codified as N.J.S.A. 54:32B-8(e) prior to the enactment of L. 1980, c. 105 (§ 32), effective September 11, 1980.