LASSER, P.J.T.C.
In this sales and use tax case, Futurevision Cable Enterprises, Inc. (Futurevision) contests use tax assessments imposed by the Director of the Division of Taxation on the purchase of services from utility companies to make utility poles ready to accommodate aerial cable, and from subcontractors to install aerial cable along the utility poles and “drop lines” from the utility poles to cable-television subscribers’ homes. These services were rendered during the period July 1, 1980 through June 30, 1983. The assessments are contested on three grounds:
(1) that the subject service charges are exempt under N.J. S.A. 54:32B-8.7 as sales of telephone services;
(2) that N.J.S.A. 54:32B-8.13(c), which provides exemption for sales of machinery and equipment used in connection with telephone and telegraph communication, encompasses charges for the installation of cable-television equipment, and
(3) that the subject services are exempt as sales of services for resale under N.J.S.A. 54:32B-3(b)(2).[1]
Companion complaints filed by Middlesex Cablevision, Inc., Storer Riverfront Cable Communications, Inc., Washington Satellite Corp., Princeton Cablevision, Inc., Storer Cable Communications of Princeton, Storer Communications of Gloucester County, C.A.T.Y. Service Company, Monmouth Cablevision, Inc. and Plainfield Cablevision, Inc. contest use tax assessments *168 imposed by the Director on like services on the same three grounds. Futurevision and these nine companies, subsidiaries of SCIPSCO, Inc., a holding company, are franchisees, owners and operators of cable television systems in various municipalities in New Jersey. Until recently, Storer Communications, Inc. was the immediate parent of these ten companies. Through an internal corporate reorganization, Storer Communications, Inc. was merged with and into its parent, SCIPSCO, Inc. It was stipulated by the parties that the decision in the subject case would control and be binding on the parties in the companion cases.
The actual calculation of the tax due was not an issue at trial and will be determined by the parties, pursuant to R. 8:9-3, following the court’s determination of the legal issues.
I.
Futurevision operates cable television systems which provide television programming by aerial-coaxial cable to subscribers’ homes. The transmission of television signals over a cable system begins at a location called the “head end,” where antennas which collect broadcast signals are concentrated. The signals are then transmitted along aerial-coaxial cable affixed to utility poles. Utility companies charge Futurevision a fee for making their poles physically ready for the aerial cable (utility company make-ready charges). This usually involves the raising or lowering of an existing utility line. The actual installation of the aerial cable onto the utility poles is performed by subcontractors hired by Futurevision. Finally, drop lines are installed from the utility poles to subscribers’ homes by Futurevision personnel or, on occasion, subcontractors. It is the use tax imposed by the Director on the utility company make-ready charges and the subcontractor installation charges that are here in contest.
The taxpayer presented the following facts through the testimony of a general manager and a vice president of Storer Communications and a cable-television consultant. Cable sub *169 scribers are charged a hook-up fee of $20 to $25 to connect them to the cable-television system. A sales tax is charged on this hook-up fee. For budgeting purposes, Futurevision uses a figure of approximately $500 as the per-subscriber cost of installing a cable-television system, which includes, on average $50 to $100 attributable to the cost of installation of the drop line to the subscriber’s home. Cable-television companies are willing to absorb the unreimbursed installation cost to obtain access to the subscriber, to be able to sell not only the basic programming service but also premium services, such as HBO and Showtime. The cable-television company charges- subscribers a monthly-service charge for programming. The subscribers’ monthly-service charges are not subject to sales tax. State Tax News (January/February 1983).
Telephone service and cable-television service are similar because they both provide communication services and both rely on the ability to acquire rights-of-way in order to reach customers. Futurevision provides predominantly one-way communication. This service is characterized as one-way, point-tomultipoint transmission of audio and video signals. The signals emanate from a central point and are broadcast to all subscribers simultaneously. Some cable-television systems have the capacity for two-way service. This two-way service is not an exchange of verbal information, but only a technical method, through use of the converter in the subscriber’s home, of determining what combination of television programming is provided to the subscriber. Whether one-way or two-way, the service provided to the subscriber is the same.
Cable-television companies have the capability to provide services in addition to cable television. These include alarm systems and data-transmission services. In California, Storer is providing a link between certain hotels and the MCI telephone system.
The Director presented the following facts through the testimony of a systems-telecommunication engineer and a law professor. Telephone services are distinguishable from cable-tele *170 vision services on technical and functional grounds. Telephone services provide discrete, point-to-point, two-way communication. Each telephone has its own pair of wires. Any user can be connected with any other user through a central switching point. Two-way transmission allows voice communication which can be initiated from either end. The telephone company also leases its lines for transmission of closed-circuit television. However, this is a very small part of the telephone company’s service.
Cable television’s point-to-multipoint transmission provides one-way communication from the head end to the customer, transmitted over shared cable. The functional difference between a telephone system and a cable-television system is that a telephone system is a conduit for two-way verbal communication and a cable-television system is a means of distributing passive entertainment and information programming.
The parties presented testimony with respect to regulation of telephone companies and cable-television companies. Both have been regulated in New Jersey, but their regulation differs in degree. Telephone companies are required to carry all signals that are paid for, but cable-television companies may use their discretion in deciding which programming to carry. Telephone companies’ rates are strictly regulated, and the establishment or change of rates is subject to the approval of the New Jersey Department of Public Utilities. Rates charged by cable-television companies for cable-television reception service also have been regulated by the Department of Public Utilities, but cable-television companies have had the option of establishing rates which need not be approved but which must not exceed the common tariff máximums provided by the department. If they wished to exceed maximum tariff rates, they were required to apply for approval. However, the 1984 Federal Cable Television Act superseded state regulation of cable-television transmission and eliminated rate regulation effective December 29, 1986. 47 U.S.C.A. § 521 et seq.
*171 II.
Taxpayer contends that the utility company make-ready charges and subcontractor installation charges to taxpayer are not subject to New Jersey sales and use tax because these services to it are exempt under § 8.7 and § 8.13(c). It relies on N.J. Bell Tel. v. Director, Division of Taxation, 152 N.J.Super. 442, 378 A.2d 38 (App.Div.1977), to support its contention. The Appellate Division held in that case that both the nonrecurring charges by the telephone company to its customers for service connections and the revenues received from audio-and video-transmission services were exempt from sales tax based on the court’s interpretation of the legislative intent to exclude from taxation all revenue from the sale of telephone services. Taxpayer also relies on Radiofone Corp. of N.J. v. Taxation Div. Director, 4 N.J. Tax 420 (Tax Ct.1982), in which the court held that mobile telephones were part of the telephone system and their sale or lease was exempt from taxation as telephone services even though they were not furnished by the telephone company. Taxpayer argues that the term “telephone services” as used in § 8.7 and the term “telephone equipment” as used in § 8.13(c) encompass cable-television services and equipment. Taxpayer concludes that utility company make-ready charges and subcontractor installation charges are telephone services exempt from taxation.
N.J.S.A. 54:32B-3(b)(2) imposes a sales tax on the receipts from every sale, except for resale, of the following services:
Installing tangible personal property, or maintaining, servicing, repairing tangible personal property not held for sale in the regular course of business ____
Services rendered by others to taxpayer in making the utility poles ready, stringing the coaxial cable and installing drop lines to subscribers' homes are services rendered in connection with the installation of tangible personal property and, unless otherwise exempted, these services are subject to taxation under § 3(b)(2).
N.J.S.A. 54:32B-8.7 provides:
*172 Receipts from the following are exempt from the tax imposed under the Sales and Use Tax Act: sales of gas, water, steam, fuel, electricity, telephone or telegraph services delivered to consumers through mains, lines, pipe, or in containers or bulk.
N.J.S.A. 54:32B-8.13(c) provides:
Receipts from the following are exempt from the tax imposed under the Sales and Use Tax Act: (c) Sales of telephone lines, cable, central office equipment or station apparatus, or other machinery, equipment or apparatus, or comparable telegraph equipment, for use directly and primarily in receiving at destination or ¡mating, transmitting and switching telephone or telegraph communication.
Tax exemption statutes are to be strictly construed against the claimant because an exemption from taxation is a departure from the equitable principle that everyone should bear one’s just and equal share of the public tax burden. Taxation is the rule; exemption is the exception to the rule. The legislative design to release one from one’s just proportion of the public burden should be expressed in clear and unequivocal terms. The burden is on the claimant to clearly bring itself within an exemption provision. Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952); Phelps Dodge Indus. v. Taxation Div. Director, 8 N.J. Tax 354, 358 (Tax Ct.1986).
Initial issues with respect to § 8.7 and § 8.13(c) are: (1) whether § 8.7, which exempts sales of telephone services to consumers, can be applied to sales of services to a cable-television company which is a provider, not a consumer, of cable-television services, and (2) whether, under § 8.13(c), charges for installation of machinery and equipment are exempt in addition to the sale of the machinery and equipment itself, regardless of whether the machinery and equipment are installed for a telephone company or a cable-television company.
Make-ready services and subcontractors’ installation services rendered to the cable-television company are not exempt under § 8.7 because they are not services rendered to a consumer. They are rendered to the cable-television company in the construction of a cable-television system.
These services are not exempt under § 8.13(c) because they are not sales of equipment. They are charges for the installation of equipment, which are not exempted under this section. *173 Middlesex Water Co. v. Taxation Div. Director, 3 N.J. Tax 233, 181 N.J.Super. 338 (Tax Ct.1981).
N.J. Bell Tel. v. Director, supra, did not deal with the purchase of installation services by the telephone company, but rather, the purchase of these services by the consumer from the telephone company. As such, these installation service charges were held by the Appellate Division to be charges for the purchase of telephone services by the consumer. A second holding in the N.J. Bell Tel. case concluded that telephone services include activities such as closed-circuit television signals. In that instance, the telephone company provided the link, and the transmission and reception were performed by the consumer using the telephone line. The court found that the telephone company was providing a service by permitting its lines to be used for one-way audio and video transmission, and therefore the service rendered by the telephone company to its consumers, using the telephone system, was nontaxable telephone service. In his concurring opinion, Judge Horn emphasized that telephone service was rendered through a system and it was the system that was made available to the consumer. N.J. Bell Tel, supra, 152 N.J.Super. at 453, 378 A.2d 38. Therefore, access to the system through installation services and use of the system for audio- and video-transmission service was what was being sold, and the right to access and use of the system was not taxable to the consumer.
The subject case does not involve a tax on the use by the consumer of a communication system. It involves a tax on services rendered to a cable-television company for installation of tangible personal property.
In Middlesex Water Co. v. Taxation Div. Director, supra, the court held that although specific exemptions exist to minimize the tax burden on public utilities, these exemptions do not extend to charges for the installation of personal property, and that the holding in N.J. Bell Tel., supra, was not sufficiently broad to exempt installation charges to the water company. The holding in Middlesex Water is as applicable to charges to a *174 telephone company or a cable-television company for installation of tangible personal property as it is to such charges to a water company.
Radiofone Corp. of N.J. v. Taxation Div. Director, supra, dealt with the sale of equipment, not installation services, and held that § 8.13 exempts equipment used as part of a telephone system. In Radiofone the court utilized the N.J. Bell Tel. concept of use of a telephone system in finding that mobile telephones are used directly in telephone communication as a part of the system and therefore their sale and lease to consumers are exempt under § 8.13, even though not furnished by the telephone company. Telephone pagers are not directly connected to the telephone system and therefore were held nonexempt under § 8.13. I conclude that make-ready and installation charges are not exempt under § 8.7 or § 8.13(c).
In addition to the foregoing, utility company make-ready charges and subcontractor installation charges are not exempt under §§ 8.7 and 8.13(c) because cable-television services are not telephone services. From the testimony, I find that telephone service is functionally, technically and economically different from cable-television service. Telephone service provides point-to-point, two-way transmission. Cable television performs a different function, which is one-way, point-to-multipoint audio and. video transmission for the purpose of providing information and entertainment. Although both use wires or cables for transmission, the equipment used at each end to render the service is different in type, and the economics of the systems differ. The telephone company is required to permit any use of its transmission lines as long as payment is received, whereas cable-television programming generally is at the discretion of the cable company. Local telephone services are a monopoly, while cable television competes with regular television broadcast channels, motion pictures, video-cassette recorders and wireless-pay television, and its municipal franchises are nonexclusive.
*175 Both telephonies and cable television are forms of telecommunications. Therefore, they have common elements which result in some crossovers, that is, telephone lines, on occasion, are used to transmit video images and some cable-television systems have the capacity to provide two-way communication, but rarely do so. In general, telephone companies do not engage in .the cable-television business, and cable-television companies do not engage in the telephone business. There are technical and economic reasons for this, in part attributable to the fact that cable-television companies eschew regulation. I, thus, conclude that a telephone system and a cable-television system are separate and distinct systems, and therefore a cable-television company in the pursuit of its principal activities is not rendering telephone services. The holdings in N.J. Bell Tel. and Radiofone are limited to exemption of services rendered to consumers by a telephone company or by others as a part of the telephone system.
I conclude that utility company make-ready charges and subcontractors’ installation charges are subject to tax under N.J.S.A. 54:32B-3(b)(2) on the ground that they are charges incurred by the cable-television company for installation of tangible personal property not exempted under § 8.7 and § 8.13(c).
III.
Taxpayer contends that installation services performed for it by others are sales of services for resale because the subscribers pay a $20 to $25 hook-up fee for installation services[2], and taxpayer claims that the balance of the cost of the installation performed for it by others is passed through to the subscriber in the monthly service charge. It cites Fairlawn Shopper Inc. v. Director, Div. of Taxation, 98 N.J. 64, 484 A.2d 659 (1984), for the proposition that even though the monthly service charge *176 is not taxable, this charge constitutes a resale of the installation service. N.J.S.A. 54:32B-3(b) taxes “the receipts from every sale, except for resale, of the following services ... installing tangible personal property.” Emphasis supplied.
It is more difficult to determine whether a sale for resale is exempt from taxation when dealing with a service rather than tangible personal property, because services are more difficult to trace and identify as being included in the final service sold. However, it is apparent from the wording of the statute that the Legislature intended services to be exempt where those services are resold. For example, if a jeweler sends a customer’s watch out to be repaired, no tax is paid by the jeweler to the repairer because the jeweler adds a sales tax to the price charged the customer for the repair. The repair of a watch is an example of a service which is resold, and is easily identified. See § 526.6 CCH New York State Tax Rptr ¶ 65-115, example 12.[3]
In the subject case, the installation of the coaxial cable on the utility poles and the utility company make-ready charge are not identifiable resale services because they are part of an entire system used by all subscribers, and it is clear that neither the coaxial cable nor its installation is sold to the subscriber. Moreover, the monthly charge to the subscriber does not allocate that portion of the charge attributable to installation.[4] Installation of the drop line to the subscriber’s house may be identifiable as directly related to the installation charge to the subscriber. I conclude that if a subcontractor has separately billed Futurevision for installation of a drop line for a particular subscriber and this subcontractor drop line installation charge has been passed on to the subscriber in whole or in part as a hook-up fee, the service (like the watch repair service), *177 has been resold.[5] To the extent that Futurevision is able to establish that payment was made to subcontractors for charges for installing drop lines to particular subscribers who have been billed (including sales tax) for this same drop-line installation service, the use tax on said subcontractor’s charge will be abated as a sale of a service for resale.
Taxpayer’s reliance on Fairlawn Shopper, supra, is misplaced. The court in that case held that the sale of shoppers’ throwaways by the printer to the distributor was not subject to sales tax because it was a sale for resale, the resale being the distribution to shoppers. The fact that the shoppers were not charged for the throwaways did not prevent the court from regarding distribution to a shopper as a sale. The court found that the consideration for the transaction was paid by the advertisers who financed the publication. The issue here does not turn on whether the final transaction is exempt or whether the consideration for the sale is paid by the purchaser or another, but on the fact that the installation charges are not identifiable in the monthly-service charges and taxpayer has not established the relationship between the cost of installation and the monthly-service charge. The cable-television company is not selling a utility company make-ready service or services for the installation of coaxial cable along utility poles. It is selling a monthly-television service.
The parties shall determine, pursuant to R. 8:9-8, the amount to be abated for identifiable drop-line installation charges passed on directly to subscribers. In all other respects, the assessment of the Director in the Futurevision case and the assessments in the nine companion cases are affirmed, and the Clerk of the Tax Court is directed to enter judgments accordingly.

Futurevision also alleged in its complaint that the subject charges were exempt as receipts for services rendered in installing property constituting a capital improvement to real property pursuant to N.J.S.A. 54:32B-3(b)(2)(v). It withdrew this claim at trial.

Thehook-up fee is a charge for installation of personal property subject to sales tax under N.J.S.A. 54:32B-3(b)(2). Sections 8.7 and 8.13(c) do not exempt this charge because it is not a charge for telephone services.

Like New Jersey, New York imposes sales and use tax on the receipts from every sale, except for resale, of certain enumerated services. N.Y. Tax Law § 1105(c) (McKinney).

If the monthy service charge did so allocate, the portion relating to the installation charge would be taxable'.

The resale of services is determined by the identification of the services resold, not the price charged in the resale transaction. For example, if the identifiable service resold cost $25 and is resold for $30 or $20 the sale, whether at a gain or a loss, is a resale.